**UNITED STATES of America, Plaintiff–Appellee,**

v.

**LaShawn Nichol CLAY, Defendant– Appellant.**

**No. 92–5562.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 20, 1992.

Decided Jan. 6, 1993.

William Cohen (argued and briefed), Robert Anderson, Asst. U.S. Attys., Ernest W. Williams, U.S. Atty., Nashville, TN, for plaintiff-appellee.

Mariah A. Wooten, Federal Public Defender's Office, Nashville, TN (argued and briefed), for defendant-appellant.

Before: KEITH and JONES, Circuit Judges; and ALLEN, Senior District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Defendant–Appellant LaShawn Nichol Clay appeals the sentence imposed on her for violating 18 U.S.C. § 3565(a) (1988 & Supp. III 1991) by possessing a controlled substance while on probation. Section 3565(a) requires a defendant whose probation is revoked due to possession of a controlled substance to be sentenced to a term "not less than one-third of the original sentence." The issue presented is whether "original sentence" refers to the sentence of probation originally imposed, or to the maximum sentence of imprisonment that could have been imposed under the federal sentencing guidelines for the original offense. The district court took the former view. We take the latter, and are thus compelled to vacate Clay's sentence and remand the case for resentencing.

## I. The Case

On March 21, 1990, Clay was indicted in the United States District Court for the Middle District of Tennessee on four counts of knowing possession of government checks stolen from the mail, in violation of 18 U.S.C. § 1708 (1988). She was arraigned on April 9, 1992, and entered a plea of not guilty at that time. On June 4, 1990, Clay tendered a plea of guilty to one count of the indictment. On August 30, 1990, the district court accepted this plea. The remaining counts were dismissed on motion of the government.

* The Honorable Charles M. Allen, Senior United States District Judge for the Western District of Kentucky, sitting by designation.

According to the United States Sentencing Commission's *Guidelines Manual* (Nov. 1989) [hereinafter U.S.S.G.], Clay had a criminal history category of I and an offense level of seven, resulting in a guidelines imprisonment range of one to seven months. On August 30, 1990, the district court sentenced Clay to three years of probation, with the following conditions: (1) that she reside for thirty days in a drug treatment facility; (2) that she then reside for ninety days in a community treatment facility or halfway house; (3) that she participate in a drug treatment program which may require drug testing; (4) that she pay restitution in the amount of $698; and (5) that she provide financial information as requested by a probation officer. Judgment was entered on August 31, 1990.

On February 27, 1992, the district court signed an arrest warrant charging that Clay had violated the conditions of her probation by possessing and/or using illegal drugs, failing to participate in a drug treatment program, failing to pay restitution, and failing to report changes in her residence. At a March 30, 1992 hearing, Clay admitted all of the charges except for the possession/use of illegal drugs charge. The district court heard the government's testimony that Clay's urine had tested positive for cocaine in January 1992, and rejected Clay's contention that the positive tests resulted from passive inhalation of cocaine smoke. The district court specifically found that she had violated the conditions of her probation by using cocaine. Clay's probation was revoked.

On April 20, 1992, pursuant to the district court's interpretation of 18 U.S.C. § 3565(a), Clay was sentenced to fifteen months of imprisonment and three years of supervised release. Judgment was entered on April 21, 1992. Clay timely appealed this sentence on April 22, 1992.

## II. The Standard of Review

This case turns on the interpretation of a federal statute, namely, 18 U.S.C. § 3565(a). This being a legal issue, our review is *de novo*. *See United States v. Granderson*, 969 F.2d 980, 982 (11th Cir. 1992); *United States v. Gordon*, 961 F.2d 426, 429 (3d Cir.1992); *United States v. Corpuz*, 953 F.2d 526, 527 (9th Cir.1992).

## III. The Meaning of "Original Sentence"

In this case, we must construe a provision of 18 U.S.C. § 3565(a), which provides, in total:

(a) Continuation or Revocation.—If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extent that they are applicable—

(1) continue him on probation, with or without extending the term or modifying or enlarging the conditions; or

(2) revoke the sentence of probation and impose any other sentence that was available under subchapter A at the time of the initial sentencing.

Notwithstanding any other provision of this section, if a defendant is found by the court to be in possession of a controlled substance, thereby violating the condition imposed by section 3563(a)(3), the court shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence.

Congress added the final paragraph as part of the Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7303(a)(2), 102 Stat. 4181, 4464 (1988) (codified at 18 U.S.C. § 3565(a)) [hereinafter '88 Act]. The district court interpreted the term, "original sentence," in this paragraph to mean the three years of probation it imposed upon Clay on August 30, 1990. The district court thus felt compelled to sentence Clay to "not less than one-third" of three years, or at least twelve months. Clay argues that the "original sentence" is the maximum term of imprisonment under the sentencing guidelines for the original crime, or seven months.

Four other circuit courts have considered this very issue. The Third and Eleventh Circuits clearly support Clay's position.

*Gordon,* 961 F.2d at 430–33; *Granderson,* 969 F.2d at 982–85. The Eighth and Ninth Circuits clearly support that of the government. *United States v. Byrkett,* 961 F.2d 1399, 1400–01 (8th Cir.1992); *Corpuz,* 953 F.2d at 528–30. In addition, at least one district court has recently reviewed this issue, taking Clay's position. *United States v. Roberson,* 805 F.Supp. 879 (D.Kan.1992). We are convinced that Clay's position is the better of the two alternatives.

### A. Evaluating the Statutory Construction Arguments

#### 1. Probation as "Sentence"

■ When Congress enacted the Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat.1987 (codified as amended at 18 U.S.C. §§ 3551 *et seq.* (1988 & Supp. III 1991) and 28 U.S.C. §§ 991–98 (1988 & Supp. II 1990)), it intended to change the penological perception of probation. The committee report accompanying the statutory provision authorizing federal courts to impose probation instead of imprisonment in certain circumstances states: "In keeping with modern criminal justice philosophy, probation is described as a form of sentence rather than, as in current law, a suspension of the imposition or execution of sentence." S.Rep. No. 225, 98th Cong., 2d Sess. 88 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3271. The version of 18 U.S.C. § 3561(a) that was passed into law reads: "A defendant who has been found guilty of an offense may be sentenced to a term of probation...." The appropriate conditions and length of probation are to be determined with reference to the same factors that guide the sentencing court in deciding the proper term of imprisonment. 18 U.S.C. § 3562(a) (1988). Thus, it is possible to understand "original sentence" to encompass a sentence of probation. *See Corpuz,* 953 F.2d at 529.

Probation, however, has traditionally been viewed not as a sentence of punishment, but as "a period of grace," *Burns v.*

*United States,* 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266 (1932), or as "conditional liberty," *Black v. Romano,* 471 U.S. 606, 611, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636 (1985). Given this traditional understanding of probation, the onus was on Congress to make it absolutely clear where "sentence" is to refer to a "sentence of probation," by including the appropriate modifying prepositional phrase or by making the meaning absolutely clear from the context. Without this clarification, the term "original sentence" should mean what it has always meant—a sentence of imprisonment. Given such lack of clarity, "original sentence" in 18 U.S.C. § 3565(a) must refer to the original sentencing guidelines imprisonment range. *Cf. Gordon,* 961 F.2d at 432.

#### 2. Natural Interpretation

One might argue that the most natural interpretation of "original sentence" is simply the "sentence originally imposed," not the "maximum term of imprisonment possible but not imposed." *See Gordon,* 961 F.2d at 434 (Greenberg, J., concurring). Since a sentence might involve probation, the "original sentence" might mean the sentence of probation actually imposed.

But three years of probation cannot be equated with three years of imprisonment. By interpreting "original sentence" to mean original sentence of probation, this equation is made. In the instant case, Clay was initially exposed to a maximum sentence under the guidelines of seven months of imprisonment. But through the magic of semantics, Clay became exposed to up to thirty-six months of imprisonment—for merely violating probation.[1] The *Gordon* court called this process "legal alchemy." *Id.* at 433.

Let us suppose, for purposes of argument, that Clay was convicted of simple possession of a controlled substance under 21 U.S.C. § 844(a) (Supp. II 1990), as opposed to merely being found in violation of the terms of her probation. The statutory

---

1. While the court in the instant case believed the government's account of why Clay tested positive for a controlled substance over Clay's account, the government did not have to prove its case beyond a reasonable doubt. *See Gordon,* 961 F.2d at 429.

maximum for this crime is one year of imprisonment. *Id.* Suppose also that she were resentenced upon violating her parole to the maximum term of imprisonment under the sentencing guidelines range for violating 18 U.S.C. § 1708 (her underlying offense). Her *maximum* exposure, should the sentences run consecutively, would be nineteen months of imprisonment. According to the government's interpretation of 18 U.S.C. § 3565(a) in this case, she would be exposed to roughly twice that.

Taking the government's position to its extreme, we note that, by statute, Clay *could have* received sixty months of probation for her initial crime. 18 U.S.C. § 3561(b) (1988). According to the government's position, had Clay received sixty months of probation and subsequently violated the terms of her probation by possessing a controlled substance, she could have been sentenced to a term of imprisonment that was 857% of the sentencing guidelines maximum term of imprisonment. And this sentence of imprisonment could have been imposed upon a mere "finding," 18 U.S.C. § 3565(a), that Clay had a trace of cocaine in her bloodstream and that this constituted possession. *See Gordon,* 961 F.2d at 429. Thus, the "natural" interpretation of "original sentence," upon closer analysis, seems to defy common sense.

### 3. "Original Sentence" in the Context of Section 3565

Congress used the term, "original sentence," in the anti-drug abuse amendment to 18 U.S.C. § 3565(a). Located directly before the paragraph containing this amendment is 18 U.S.C. § 3565(a)(2), which states that, if a defendant is generally in violation of probation, the court may "revoke the sentence of probation and impose any other *sentence that was available under subchapter A* at the time of the initial sentence" (emphasis added). Located directly after the paragraph containing the amendment is 18 U.S.C. § 3565(b), which states that, if a defendant is found in possession of a firearm during probation, the court shall "revoke the sentence of probation and impose any other *sentence that was available under subchapter A* at the

time of the initial sentencing" (emphasis added). If Congress intended "original sentence" to mean "sentence that was available under subchapter A," why did it not use the specific and technical wording found directly before and after? It is possible to answer that Congress intended something different, namely, that "original sentence" means the sentence of probation actually imposed. *See Byrkett,* 961 F.2d at 1400–01.

But such an interpretation does violence to another basic principle of statutory interpretation. When interpreting the effect of a new law upon an old one, "[o]nly a clear repugnancy between the old law and the new results in the former giving way and then only *pro tanto* to the extent of the repugnancy." *Georgia v. Pennsylvania R.R.,* 324 U.S. 439, 457, 65 S.Ct. 716, 726, 89 L.Ed. 1051 (1945). Without a clear expression of congressional intent to the contrary, we should try to reconcile, as much as possible, the anti-drug abuse amendment to the rest of Section 3565(a). *See Gordon,* 961 F.2d at 431. Before the anti-drug abuse amendment, the maximum sentence that could have been imposed after a violation of probation was the maximum sentence available at the time of initial sentencing. Interpreting "original sentence" to mean original sentence of probation may well take the new sentence of imprisonment out of the original sentencing guidelines range. By interpreting "original sentence" to refer to the sentence of imprisonment that could have been imposed originally, less violence is done to Section 3565(a)(2) in that, though the court's discretion is limited to a degree by the amendment, the new sentence of imprisonment must still fall within the original sentencing guidelines range of imprisonment.

### 4. Analogies to the Supervised Release Provision

As part of the '88 Act, Congress added the following language to 18 U.S.C. § 3583(g): "If the defendant is found by the court to be in the possession of a controlled substance, the court shall terminate

the *term of supervised release* and require the defendant to serve in prison not less than one-third of the *term of supervised release.*" Pub.L. No. 100–690, § 7303(b)(2), 102 Stat. 4181, 4464 (1988) (codified at 18 U.S.C. § 3583(g)) (emphasis added). The language found in 18 U.S.C. § 3583(g) parallels that of 18 U.S.C. § 3565(a): "[I]f a defendant is found by the court to be in possession of a controlled substance . . ., the court shall revoke *the sentence of probation* and sentence the defendant to not less than one-third of the *original sentence*" (emphasis added). The antecedent of "term of supervised release" in 18 U.S.C. § 3583(g) is "term of supervised release." By analogy to 18 U.S.C. § 3583(g), it might be said that the antecedent of "original sentence" in 18 U.S.C. § 3565(a) is "the sentence of probation."

But the fact that Congress used the term, "term of supervised release," in Section 3583(g), but "original sentence" in Section 3565(a) "suggests that Congress intended to punish violations of supervised release and probation differently." *Gordon,* 961 F.2d at 431. In other words, given the parallel structures of the statutory provisions, we should assume that a marked semantic difference connotes an intended penological difference.

### B. Evaluating the Policy–Based Arguments

#### 1. The Purpose of the Anti–Drug Abuse Amendment

■ It might be argued that if "original sentence" refers merely to the maximum sentence under the guidelines that the defendant could have received if she or he had been sentenced to imprisonment instead of having been placed on probation, the anti-drug abuse policies which underlie the controlled substance provision of Section 3565(a) would be frustrated. Under the sentencing guidelines, probation is used only where the sentencing guidelines maximum imprisonment term is relatively small. *See* U.S.S.G. § 5B1.1(a). Requiring a sentence of merely one-third of an already paltry maximum would arguably do very little toward deterring substance abuse.

*See Gordon,* 961 F.2d at 434 (Greenberg, J., concurring).

But *requiring* a court to impose a sentence of *imprisonment* of *at least* one-third of the original sentencing guidelines maximum imprisonment term furthers the goals of the anti-drug abuse amendment insofar as it builds a floor below which a sentencing judge may not go upon a defendant's revocation of probation for possession of a controlled substance. *See id.* at 433 n. 8.

#### 2. The Integrity of the Sentencing Guidelines.

The district court shall impose a sentence upon a defendant within the sentencing guidelines range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1988). In making a departure from the guidelines, the district court must provide a "specific reason" supporting it. 18 U.S.C. § 3553(c)(2) (1988). "This requirement is satisfied by 'a short clear written statement or a reasoned statement from the bench' that identifies the aggravating factors and its reasons for connecting them to the permissible grounds for departure." *United States v. Feinman,* 930 F.2d 495, 501 (6th Cir.1991) (quoting *United States v. Rodriguez,* 882 F.2d 1059, 1066 (6th Cir.1989), *cert. denied,* 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990)).

■ Sentencing Clay to anything above seven months of imprisonment amounts to an upward departure from the guidelines without requiring a "reasoned statement" as to why the guidelines do not adequately take into consideration the circumstances of her case. A mere "finding" of the court that the Defendant was in possession of a controlled substance was enough to raise the maximum sentence, in this case, over 500%. While mere findings are enough to justify *adjustments, see United States v. Duque,* 883 F.2d 43, 44–45 (6th Cir.1989);

*see also United States v. Beaulieu,* 900 F.2d 1531, 1535–36 (10th Cir.), *cert. denied,* 497 U.S. 1009, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990); *United States v. Mejia–Orosco,* 867 F.2d 216, 221 (5th Cir.), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989), they cannot justify *departures.* Interpreting "original sentence" to mean original sentence of probation essentially does an end run around the reasoned statement requirement for departures. Such an interpretation thus does violence to how the sentencing guidelines are to be employed.

### 3. Lenity

When interpreting ambiguous criminal statutes, the policy of lenity comes into play. As the United States Supreme Court has stated, "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958). Applied to this case, the policy of lenity dictates that we err on the side of lesser penalties by interpreting "original sentence" to refer to the original sentencing guidelines imprisonment range. *See Granderson,* 969 F.2d at 983.

### IV. Conclusion

On balance, we are persuaded that Clay's interpretation of 18 U.S.C. § 3565(a) is the better of the two alternatives. We hold that "original sentence" in 18 U.S.C. § 3565(a) refers to the sentencing guidelines imprisonment range for the underlying offense. Accordingly, we VACATE the sentence, and REMAND the case to the district court with instructions to have Clay released forthwith from confinement if she has been incarcerated for a period in excess of the maximum allowable under the applicable sentencing guidelines imprisonment range. The district court may then impose conditions upon her release from confine-

ment that it deems meet and just, in accordance with the law of this circuit.