**UNITED STATES of America**

v.

**Valerie Malisse HOOKER, Defendant.**

**Crim. No. 91–0387–01 (JHG).**

United States District Court,
District of Columbia.

Oct. 12, 1993.

---

Jeffrey Jacobovitz, Washington, D.C., for defendant.

Assistant U.S. Atty. Kathleen M. O'Connor, for Government.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This matter is before the Court on the August 24, 1993, remand from the United States Court of Appeals for the District of Columbia Circuit ("Circuit Court").[1] The Circuit Court affirmed this Court's application of the evidentiary standard used to revoke the probation of defendant Valerie Malisse Hooker ("Hooker"), but remanded for the purpose of identifying whether the Court found that defendant violated a "specific probation condition" or whether it made a "general finding of a probation violation." If the Court finds a specific violation of probation, it is obligated to revoke probation. A general finding of a probation violation, in contrast, permits the Court to retain discretion over the revocation decision. For the reasons explained below, the Court finds a general probation violation.

### I. *Background*

On September 3, 1991, Hooker pleaded guilty to distributing cocaine base in violation of 21 U.S.C. §§ 841(a) & (b)(1)(C). 993 F.2d at 898. Although the United States Sentencing Guidelines mandate a 63–78 month sentence for this offense, this Court departed from the guidelines and sentenced Hooker to two years of probation commencing January 10, 1992. *See* U.S.S.G. § 2D1.1.

Hooker was subsequently arrested on June 22, 1992. A grand jury in the Superior Court of the District of Columbia indicted Hooker on two counts of possession of cocaine base with intent to distribute, and one count of possession of drug paraphernalia.

---

1. The Circuit Court opinion is published at 993 F.2d 898 (D.C.Cir.1993).

Defendant was released pending trial. At the time of this Court's probation revocation hearing, these charges were still pending.[2]

Defendant was again arrested on September 3, 1992, for violating the same statutory provision. At the hearing on the government's motion for pretrial detention, Magistrate Judge Patrick J. Attridge concluded that probable cause existed to find that defendant possessed cocaine base with intent to distribute. The Magistrate Judge found that Hooker was a danger to the community and ordered that she be detained. The government subsequently dismissed this case, but it was pending grand jury indictment at the time of the probation revocation hearing in this Court.

Because both of these arrests occurred during the pendency of Hooker's probation, the probation officer requested a compliance hearing. At the probation revocation hearing held on October 8 and 22,[3] 1992, this Court found that the government had proven either "to the reasonable satisfaction of the judge" *or* by a preponderance of the evidence that Hooker had violated her probation.[4]

The Court found this to be a Grade "A" violation under section 7B1.1(a)(1) of the sentencing guidelines. Under this section, the Court ruled that it "must mandatorily revoke probation" and sentence Hooker to between twelve and eighteen months incarceration. *See* U.S.S.G. §§ 7B1.3 ("Upon a finding of a Grade A or B violation, the court *shall* revoke probation.") (emphasis added); 7B1.4 (requiring minimum sentence of twelve months for Grade A violation). The Court sentenced Hooker to the "lowest end of that period of time," twelve months. Hooker appealed.

On appeal, Hooker raised three issues. First, she argued that the probation revocation violated her constitutional right to due process because "she lacked sufficient notice of the evidentiary standard that the district court would apply." 993 F.2d at 899. The Circuit Court rejected this argument; it ruled that Local Rule 309(c)(4) of the District Court provided constitutionally sufficient notice that a preponderance of the evidence standard is applicable to a probation revocation determination.[5] The Circuit Court then concurred with this Court's determination that there was little, if any, difference between the standards, and noted that this Court had found a probation violation under either standard. 993 F.2d at 899.

Second, Hooker argued that the revocation proceeding violated her constitutional right to due process because the preponderance of the evidence standard "does not provide adequate protection to the defendant." *Id.* She asserted that the constitution required a clear and convincing evidence standard. *Id.* Reasoning that once the government has obtained a conviction a defendant has diminished liberty interests that are adequately protected by the preponderance of the evidence standard, the Circuit Court rejected this argument. *Id.* at 900.

The Circuit Court then turned to Hooker's third and final argument. Hooker argued that this Court erred in viewing the policy statements in Chapter VII of the Sentencing Guidelines as binding. Notwithstanding the mandatory language of section 7B1.3(a)(1) of the sentencing guidelines, the Circuit Court ruled that this section was "merely advisory." 993 F.2d at 900. The Circuit Court based this ruling on the Introduction to Chapter 7 of the guidelines, which indicates that the Sentencing Commission only intended the Policy Statements in Chapter 7 to be "adviso-

---

**2.** Subsequent to the hearing, the charges were dismissed. 993 F.2d at 899.

**3.** The Circuit Court indicated that the probation revocation hearing was held on October 22, 1993, but the transcript of the hearing indicates that it was held on October 21, 1993.

**4.** Due to conflict among the circuit courts, it was unclear to the Court which evidentiary standard was appropriate. Noting that the standards were "so similar that I fail to find any lines of differentiation among them," this Court found that Hooker had violated her probation under either standard.

**5.** Local Rule 309(c)(4) provides as follows:

Before probation is revoked the court, in cases where the facts of violation are contested, shall make findings of fact and shall find that the government has established by a preponderance of evidence that the probationer has violated a condition of probation.

ry" in order to afford greater flexibility to itself and the Courts. *Id.*

Consequently, the Circuit Court remanded for these proceedings. The Circuit Court indicated that this Court must determine whether Hooker violated a "specific probation condition," or whether the Court made a "general finding of a probation violation." *Id.* at 901. If the Court finds a violation of a "specific probation condition," then it is *"obligate[d] ... to revoke probation." Id.* (emphasis added). In contrast, a "general finding of a probation violation permits [this] Judge to retain *discretion* over the revocation decision.... See 18 U.S.C. § 3565(a)." *Id.* (emphasis added). In exercising this discretion, the Circuit Court instructed that this Court "should consider, but not feel bound by, the Policy Statements in Chapter VII." *Id.*

The Circuit Court did not explain its distinction between "specific probation violation" and a "general violation of probation." This Court will assume that by a "specific probation violation," the Circuit Court meant a finding of possession of a controlled substance to trigger 18 U.S.C. § 3565. (Probation Condition No. 7). This is the only logical reading of the Circuit Court's opinion because the Circuit Court uses "not associating with individuals involved in criminal activity" (Probation Condition No. 9) as an example of a non-specific probation violation. 993 F.2d at 901. This condition, however, is no more specific than any other of Hooker's probation conditions.

## II.  *Discussion*

To comply with the mandate of the Circuit Court, this Court must determine whether Hooker violated a "specific probation condition" or whether she merely violated the

general provisions of her probation. This determination impacts not only on the level of discretion that this Court has to revoke probation, but—more critically for Hooker— also impacts on the sentence to be imposed on her.

■ Based on the evidence presented at the probation revocation hearing, the Court could find that Hooker violated the "specific probation condition" that she "not purchase, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances." [6] (Probation Condition No. 7). Such a finding would compel the Court to "revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence." 18 U.S.C. sec. 3565(a).

In this Circuit, at this time, the impact of this statute on Hooker is uncertain. As the Circuit Court noted in its opinion, "[t]he circuits are currently split on the meaning of the term 'original sentence' " in section 3565. 993 F.2d at 901 n. 3. Some circuits have concluded that "original sentence" within the meaning of section 3565 refers to the maximum sentence that the district court *could have imposed* under the guidelines.[7] Other circuits, however, have taken the view that section 3565 refers only to the sentence that the district court *actually imposed* on the defendant.[8]

Reading the statute and applying several basic principles of statutory construction, it is facially easy to accept the latter view. As the Fifth Circuit noted in *Sosa,* "the starting point for interpreting a statute is the language of the statute itself." 997 F.2d at 1132 (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct.

---

6. The evidence presented at the probation revocation hearing could have proven that Hooker violated either Probation Condition No. 7 (possession of a controlled substance), Probation Condition No. 8 (not frequent places where controlled substances are sold, used, distributed, or administered), or both. As explained below, the Court finds by a preponderance of the evidence only that Hooker violated Probation Condition No. 8.

7. *See United States v. Alese,* 6 F.3d 85, (2d Cir. 1993); *United States v. Clay,* 982 F.2d 959 (6th

Cir.1993); *United States v. Diaz,* 989 F.2d 391 (10th Cir.1993); *United States v. Gordon,* 961 F.2d 426 (3d Cir.1992); *United States v. Granderson,* 969 F.2d 980 (11th Cir.1992), *cert. granted,* ── U.S. ──, 113 S.Ct. 3033, 125 L.Ed.2d 721 (1993).

8. *See United States v. Sosa,* 997 F.2d 1130 (5th Cir.1993); *United States v. Byrkett,* 961 F.2d 1399 (8th Cir.1992); *United States v. Corpuz,* 953 F.2d 526 (9th Cir.1992).

2051, 64 L.Ed.2d 766 (1980)). If that language is clear and unambiguous, a court need look no further unless that meaning produces a result "demonstrably at odds with the intentions of its drafters." *Id.* Section 3565, on its face, refers to "the original sentence," it does not refer to the maximum sentence that the district court could have imposed. Such basic statutory construction could end the inquiry.

Moreover, this simple analysis is bolstered by reading the statute in context. *Cf. Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974) (stating that a particular clause must be read in connection with the whole statute). Immediately preceding the controversial language in the statute is section 3565(a)(2), which provides that, if a defendant generally violates probation, the district court may "revoke the sentence of probation and impose *any other sentence that was available under subchapter A at the time of the initial sentence.*" 18 U.S.C. sec. 3565(a)(2) (emphasis added). Immediately succeeding the controversial language is section 3565(b), which similarly provides that, if a defendant is in actual possession of a firearm while serving probation, the district court "shall ... revoke the sentence of probation and impose *any other sentence that was available under subchapter A at the time of the initial sentencing.*" 18 U.S.C. sec. 3565(b) (emphasis added); *see Clay,* 982 F.2d at 963. Clearly had Congress intended "the original sentence" to mean anything other than the actual sentence imposed, it knew how to say so.

The plain meaning of the statute and a reading of the statute in context, therefore, support the position that the term "the original sentence," within the meaning of section 3565 means the sentence actually imposed on the defendant. In fact, the rule of lenity would appear to mandate this result. This rule prohibits a court from interpreting "a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States,* 358

U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958) (quoted in *Clay,* 982 F.2d at 965).

In a typical case, but not always, the sentence actually imposed will be less than the maximum allowable by the guidelines. The rule of lenity, therefore, dictates that the court look to the sentence actually imposed. For example, Hooker received two years probation. Under this reading, she would receive a minimum of eight months incarceration (one-third of twenty-four months).

Despite this seemingly straightforward result, the rule of lenity actually compels the *opposite* conclusion. Take, for example, the facts of *Gordon.* 961 F.2d at 428. Defendant pleaded guilty to violating 18 U.S.C. § 1703, admitting that she removed a check from the mail while a United States Postal worker. Under the guidelines, she could have received a sentence of zero to four months incarceration. The district court, instead, sentenced Gordon to three years probation. Gordon subsequently violated her probation by possessing a controlled substance. The district court, invoking section 3565, sentenced her to one year incarceration (one-third of three years) for violating her probation. This resulted in Gordon being sentenced to three times the maximum sentence for her underlying offense merely for violating her probation. This result violates not only the rule of lenity, but all notions of common sense as well. *See Clay,* 982 F.2d at 962–63 (recognizing that the "natural" reading of § 3565 could "defy common sense"). *But see Sosa,* 997 F.2d at 1134 (recognizing, but accepting, the "harshness of this interpretation").

This Court cannot espouse logic that might produce such a result. In fact, in the context of a "sentence" of probation, this may often be the result, and the Court cannot apply diametrically opposite logic depending upon the results of a particular case.

The Court must be consistent in its construction of a particular statute. As a result, the Court will interpret the phrase "the original sentence" in section 3565 to mean the maximum sentence that could have been imposed at the time of sentence.[9] For Hooker,

---

9. Distinguishing a "sentence" of probation from

one of confinement is not unusual. Although the

this interpretation means that, if the Court finds that she possessed a controlled substance, she must be sentenced to twenty-six months (one-third of seventy-eight months) incarceration.

■ Returning to the mandate of the Circuit Court, if this Court does not find that Hooker violated a "specific probation condition," but rather makes "a general finding of a probation violation," section 3565 and the required minimum twenty-six months' sentence is not triggered and the Court retains discretion in imposing a sentence on Hooker. At the probation revocation hearing, Hooker testified that she met with her probation officer Mr. Thomas in March 1992. Oct. 21, 1992, Tr. at 16. She told Mr. Thomas that she "caught [someone] smoking in my home." *Id.* The questioning continued as follows:

Q: Didn't he tell you, though, that if there were drugs in that house, that you should get away from that house?

A: Yes, he did. That's why I went and got a job, trying to, you know, get out.

Q: But you continued to live in the house.

A: I didn't have nowhere else to go.

*Id.* Despite her knowledge that drugs were used in the house, Hooker stayed in the house. This directly violated the provision of her probation that she "shall not frequent places where controlled substances are illegally sold, used, distributed, or administered." (Probation Condition No. 8). The Court finds by a preponderance of the evidence, therefore, that Hooker violated her probation.

Although this violates Hooker's probation, it does not trigger section 3565 because it is not a finding that Hooker was "in possession of a controlled substance." The Court, therefore, retains discretion to sentence Hooker on revocation of probation proceedings. In reconsidering Hooker's sentence, as the Circuit Court noted, the Court "should consider, but not feel bound by, the policy statements in Chapter VII." The violation that the Court found is technically a Grade "C" violation for which the Chapter 7 policy statements advise a mandatory maximum sentence of nine months. The Court, however, having considered the policy statements in Chapter VII, and not being bound by them, finds that the twelve month sentence originally imposed is appropriate.

### III. *Conclusion*

For the reasons stated above, the sentence of twelve (12) months originally imposed upon defendant Valerie Malisse Hooker continues to be, and is, an appropriate sentence for her violation of her probation. Accordingly, it is hereby

ORDERED that the October 21, 1992, sentence of Valerie Malisse Hooker of twelve (12) months on revocation of probation remains in full force and effect.[10]

IT IS SO ORDERED.

sentencing guidelines consider a period of probation to be a "sentence," U.S.S.G. Ch. 7, Pt. A(2)(a), the Supreme Court has considered probation to be merely "a period of grace." *Burns v. United States*, 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266 (1932). As the *Clay* court persuasively argues:

Given this traditional understanding of probation, the onus was on Congress to make it absolutely clear where "sentence" is to refer to a "sentence of probation," by including the appropriate modifying prepositional phrase or by making the meaning absolutely clear from the context. Without this clarification, the term "original sentence" should mean what it has always meant—a sentence of imprisonment. Given such lack of clarity, "original sentence" in [section 3565] must refer to the original sentencing guidelines imprisonment range.

*Clay*, 982 F.2d at 962.

10. This means that Hooker, having served virtually all this sentence, should be released shortly from incarceration on this offense.