# UNITED STATES *v.* GRANDERSON

No. 92–1662. Argued January 10, 1994—Decided March 22, 1994

GINSBURG, J., delivered the opinion of the Court, in which BLACKMUN, STEVENS, O'CONNOR, and SOUTER, JJ., joined. SCALIA, J., *post*, p. 57, and KENNEDY, J., *post*, p. 60, filed opinions concurring in the judgment. REHNQUIST, C. J., filed a dissenting opinion, in which THOMAS, J., joined, *post*, p. 69.

*Thomas G. Hungar* argued the cause for the United States. With him on the briefs were *Solicitor General Days, Acting Assistant Attorney General Keeney,* and *Deputy Solicitor General Bryson.*

*Gregory S. Smith,* by appointment of the Court, 510 U. S. 806, argued the cause for respondent. With him on the brief was *Stephanie Kearns.**

JUSTICE GINSBURG delivered the opinion of the Court.

This case presents a question of statutory interpretation regarding revocation of a federal sentence of probation. The law at issue provides that if a person serving a sentence of probation possesses illegal drugs, "the court shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence." 18 U. S. C. § 3565(a). Congress did not further define the critical term "original sentence," nor are those words, unmodified, used elsewhere in the Federal Criminal Code chapter on sentencing. Embedded in that context, the words "original sentence" in § 3565(a) are susceptible to at least three interpretations.

Read in isolation, the provision could be taken to mean the reimposition of a sentence of probation, for a period not less than one-third of the original sentence of probation. This construction, however, is implausible, and has been urged by neither party, for it would generally demand no increased sanction, plainly not what Congress intended.

The Government, petitioner here, reads the provision to draw the time period from the initially imposed sentence of probation, but to require incarceration, not renewed probation, for not less than one-third of that period. On the Government's reading, accepted by the District Court, respondent Granderson would face a 20-month mandatory minimum sentence of imprisonment.

Granderson maintains that "original sentence" refers to the sentence of incarceration he could have received initially,

*Briefs of *amici curiae* urging affirmance were filed for the American Bar Association by *R. William Ide III* and *Antonio B. Ianniello;* and for the National Association of Criminal Defense Lawyers by *Stephen R. Sady.*

in lieu of the sentence of probation, under the United States Sentencing Guidelines. Granderson's construction calls for a 2-month mandatory minimum. The Court of Appeals accepted Granderson's interpretation, see 969 F. 2d 980 (CA11 1992); returns in other Circuits are divided.[1]

The "original sentence" prescription of § 3565(a) was a late-hour addition to the Anti-Drug Abuse Act of 1988, a sprawling enactment that takes up 364 pages in the Statutes at Large. Pub. L. 100–690, 102 Stat. 4181–4545. The provision appears not to have received Congress' careful attention. It may have been composed, we suggest below, with the pre-1984 federal sentencing regime in the drafters' minds; it does not easily adapt to the regime established by the Sentencing Reform Act of 1984.

According the statute a sensible construction, we recognize, in common with all courts that have grappled with the "original sentence" conundrum, that Congress prescribed imprisonment as the *type* of punishment for drug-possessing probationers.[2] As to the *duration* of that punishment, we rest on the principle that " 'the Court will not interpret a federal criminal statute so as to increase the penalty . . . when such an interpretation can be based on no more than a

---

[1] Compare *United States* v. *Penn,* 17 F. 3d 70 (CA4 1994); *United States* v. *Alese,* 6 F. 3d 85 (CA2 1993) *(per curiam); United States* v. *Diaz,* 989 F. 2d 391 (CA10 1993); *United States* v. *Clay,* 982 F. 2d 959 (CA6 1993), cert. pending, No. 93–52; *United States* v. *Gordon,* 961 F. 2d 426 (CA3 1992) (all interpreting "original sentence" to mean the period of incarceration originally available under the United States Sentencing Guidelines), with *United States* v. *Sosa,* 997 F. 2d 1130 (CA5 1993); *United States* v. *Byrkett,* 961 F. 2d 1399 (CA8 1992); *United States* v. *Corpuz,* 953 F. 2d 526 (CA9 1992) (all reading "original sentence" to refer to the term of the revoked probation).

[2] The interpretation offered by JUSTICE KENNEDY—a reduced sentence of *probation* as the mandatory minimum—is notable for its originality. No court that has essayed construction of the prescription at issue has come upon the answer JUSTICE KENNEDY finds clear in "the text and structure of the statute." *Post,* at 60, 68. But cf. *post,* at 67 (describing the statute as "far from transparent").

guess as to what Congress intended.'" *Bifulco* v. *United States*, 447 U. S. 381, 387 (1980), quoting *Ladner* v. *United States*, 358 U. S. 169, 178 (1958). We therefore adopt Granderson's interpretation and affirm the judgment of the Court of Appeals.

## I

Granderson, a letter carrier, pleaded guilty to one count of destruction of mail, in violation of 18 U. S. C. § 1703(a). Under the Sentencing Guidelines, the potential imprisonment range, derived from the character of the offense and the offender's criminal history category, was 0–6 months. The District Court imposed no prison time, but sentenced Granderson to five years' probation and a $2,000 fine.[3] As a standard condition of probation, Granderson was required to submit periodically to urinary testing for illegal drug use.

Several weeks after his original sentencing, Granderson tested positive for cocaine, and his probation officer petitioned for revocation of the sentence of probation. Finding that Granderson had possessed cocaine, the District Court revoked Granderson's sentence of probation and undertook to resentence him, pursuant to § 3565(a), to incarceration for "not less than one-third of the original sentence." The term "original sentence," the District Court concluded, referred to the term of probation actually imposed (60 months) rather than the imprisonment range authorized by the Guidelines (0–6 months). The court accordingly sentenced Granderson to 20 months' imprisonment.

The Court of Appeals upheld the revocation of the sentence of probation but vacated Granderson's new sentence. 969 F. 2d 980 (CA11 1992). That court observed that the probation revocation sentence of 20 months' imprisonment imposed by the District Court was far longer than the sen-

---

[3] The Sentencing Reform Act of 1984, for the first time, classified probation as a sentence; before 1984, probation had been considered an alternative to a sentence. See S. Rep. No. 98–225, p. 88 (1983).

tence that could have been imposed either for the underlying crime of destroying mail (six months) or for the crime of cocaine possession (one year). *Id.*, at 983, and n. 2. The Court of Appeals called it "legal alchemy" to convert an "original sentence" of "'conditional liberty,'" with a correspondingly long term, into a sentence of imprisonment with a time span geared to the lesser restraint. *Id.*, at 984, quoting *United States* v. *Gordon,* 961 F. 2d 426, 432 (CA3 1992). Invoking the rule of lenity, 969 F. 2d, at 983, the court concluded that the phrase "original sentence" referred to "the [0–6 month] sentence of incarceration faced by Granderson under the Guidelines," not to the 60-month sentence of probation, *id.*, at 984. Because Granderson had served 11 months of his revocation sentence—more than the 6-month maximum—the Court of Appeals ordered him released from custody. *Id.*, at 985.

## II

The text of § 3565(a) reads:

"If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may . . .

"(1) continue him on probation, with or without extending the term or modifying [or] enlarging the conditions; or

"(2) revoke the sentence of probation and impose any other sentence that was available . . . at the time of the initial sentencing.

"*Notwithstanding any other provision of this section, if a defendant is found by the court to be in possession of a controlled substance . . . the court shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence.*" (Emphasis added.)

The Government argues that the italicized proviso is unambiguous. The "original sentence" that establishes the

benchmark for the revocation sentence, the Government asserts, can only be the very sentence actually imposed, *i. e.,* the sentence of probation. In this case, the sentence of probation was 60 months; "one-third of the original sentence" is thus 20 months. But for two reasons, the Government continues, Granderson's 20-month revocation sentence must be one of imprisonment rather than probation. First, the contrast in subsections (1) and (2) between "continu[ing]" and "revok[ing]" probation suggests that a revocation sentence must be a sentence of imprisonment, not a continuation of probation. Second, the Government urges, it would be absurd to "punish" drug-possessing probationers by revoking their probation and imposing a new term of probation no longer than the original. Congress could not be taken to have selected drug possessors, from the universe of all probation violators, for more favorable treatment, the Government reasons, particularly not under a provision enacted as part of a statute called "The Anti-Drug Abuse Act."

We agree, for the reasons stated by the Government, that a revocation sentence must be a term of imprisonment. Otherwise the proviso at issue would make little sense.[4] We do not agree, however, that the term "original sentence" relates to the duration of the sentence set for probation. The statute provides that if a probationer possesses drugs, "the court

---

[4] JUSTICE KENNEDY's novel interpretation would authorize revocation sentences under which drug possessors could profit from their violations. The present case is an example. The District Court determined, just over 4 months into Granderson's 60-month sentence of probation, that Granderson had violated his conditions of probation by possessing drugs. If JUSTICE KENNEDY were correct that the proviso allows a revocation sentence of probation, one-third as long as the sentence of probation originally imposed, then the District Court could have "punished" Granderson for his cocaine possession by reducing his period of probation from 60 months to just over 24 months. JUSTICE KENNEDY's interpretation would present a similar anomaly whenever the drug-possessing probationer has served less than two-thirds of the sentence of probation initially imposed. Surely such an interpretation is implausible.

shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence." This language appears to differentiate, not to equate or amalgamate, "the sentence of probation" and "the original sentence." See *United States* v. *Penn,* 17 F. 3d 70, 73 (CA4 1994) ("a sentence of probation does not equate to a sentence of incarceration"). If Congress wished to convey the meaning pressed by the Government, it could easily have instructed that the defendant *be incarcerated* for a term "not less than one-third of the original sentence of probation," or "not less than one-third of the revoked term of probation."

The Government's interpretation has a further textual difficulty. The Government reads the word "sentence," when used as a verb in the proviso's phrase "sentence the defendant," to mean "sentence to imprisonment" rather than "sentence to probation." Yet, when the word "sentence" next appears, this time as a noun ("original sentence"), the Government reads the word to mean "sentence of probation." Again, had Congress designed the language to capture the Government's construction, the proviso might have read: "[T]he court shall revoke the sentence of probation and sentence the defendant to *a term of imprisonment whose length is* not less than one-third *the length of* the original sentence *of probation.*" Cf. *Reves* v. *Ernst & Young,* 507 U. S. 170, 177 (1993) ("it seems reasonable to give . . . a similar construction" to a word used as both a noun and a verb in a single statutory sentence).

As the Court of Appeals commented, "[p]robation and imprisonment are not fungible"; they are sentences fundamentally different in character. 969 F. 2d, at 984. One-third of a 60-month term of *probation* or "conditional liberty" is a sentence scarcely resembling a 20-month sentence of *imprisonment.* The Government insists and, as already noted, we agree, that the revocation sentence, measured as one-third of the "original sentence," must be a sentence of imprisonment. But that "must be" suggests that "original sentence" refers

the resentencer back to an anterior sentence of imprisonment, not a sentence of probation.

## III

Granderson's reading of the § 3565(a) proviso entails such a reference back. The words "original sentence," he contends, refer back to § 3565(a)(2), the prescription immediately preceding the drug-possession proviso: the "other sentence that was available under subchapter A [the general sentencing provisions] at the time of the initial sentencing." The Guidelines sentence of imprisonment authorized by subchapter A was the "original sentence," Granderson argues, for it was the presumptive sentence, the punishment that probation, as a discretionary alternative, replaced. The Guidelines range of imprisonment available at Granderson's initial sentencing for destruction of mail was 0–6 months. Starting at the top of this range, Granderson arrives at two months as the minimum revocation sentence.

### A

Granderson's interpretation avoids linguistic anomalies presented by the Government's construction. First, Granderson's reading differentiates, as does the proviso, between "the sentence of probation" that the resentencer must revoke and "the original sentence" that determines the duration of the revocation sentence. See *supra*, at 46. Second, Granderson's construction keeps constant the meaning of "sentence" in the phrases "sentence the defendant" and "original sentence." See *ibid.* While the Government cannot easily explain how multiplying a sentence *of probation* by one-third can yield a sentence *of imprisonment*, Granderson's construction encounters no such shoal. See *Gordon*, 961 F. 2d, at 433 ("one-third of three years probation is one year *probation*, not one year *imprisonment*").[5]

---

[5] The dissent notes that the term "original sentence" has been used in a number of this Court's opinions and in other statutes and rules, in each instance to refer to a sentence actually imposed. See *post*, at 72–73, and

Granderson's reading of the proviso also avoids the startling disparities in sentencing that would attend the Government's interpretation. A 20-month minimum sentence would exceed not only the 6-month maximum punishment under the Guidelines for Granderson's original offense; it would also exceed the 1-year statutory maximum, see 21 U. S. C. § 844(a), that Granderson could have received, had the Government prosecuted him for cocaine possession and afforded him the full constitutional protections of a criminal trial, rather than the limited protections of a revocation hearing.[6] Indeed, a 20-month sentence would exceed consecutive sentences for destruction of mail and cocaine possession (18 months in all).

Furthermore, 20 months is only the *minimum* revocation sentence, on the Government's reading of the proviso. The Government's interpretation would have allowed the District Court to sentence Granderson to a term of imprisonment equal in length to the revoked term of probation. This prison term—five years—would be 10 times the exposure to imprisonment Granderson faced under the Guidelines for his

---

nn. 4–5. None of those cases, statutes, or rules, however, involves an interpretive problem such as the one presented here, where, if the "original sentence" is the sentence actually imposed, a "plain meaning" interpretation of the proviso leads to an absurd result. See *supra*, at 41, 45, and n. 4.

The dissent observes, further, that other federal sentencing provisions "us[e] the word 'sentence' to refer to the punishment actually imposed on a defendant." *Post*, at 71, n. 2. In each of the cited instances, however, this reference is made clear by context, either by specifying the type of sentence (*e. g.*, "sentence to pay a fine," "sentence to probation," 18 U. S. C. § 3551(c)), or by using a variant of the phrase "impose sentence" (see §§ 3553(a), (b), (c), (e); 3554–3558).

[6] At a revocation hearing, in contrast to a full-scale criminal trial, the matter is tried to the court rather than a jury; also, the standard of proof has been held to be less stringent than the reasonable-doubt standard applicable to criminal prosecutions. See 18 U. S. C. § 3565(a); Fed. Rule Crim. Proc. 32.1; *United States* v. *Gordon*, 961 F. 2d 426, 429 (CA3 1992) (citing cases).

original offense, and 5 times the applicable statutory maximum for cocaine possession. It seems unlikely that Congress could have intended so to enlarge the District Court's discretion. See *Penn*, 17 F. 3d, at 73.[7]

## B

Two of the Government's arguments against Granderson's interpretation are easily answered. First, the Government observes that the purpose of the Anti-Drug Abuse Act was to impose tough sanctions on drug abusers. See Brief for United States 22–26 (listing new penalties and quoting statements from Members of Congress that they intended to punish drug offenders severely). But we cannot divine from the legislators' many "get tough on drug offenders" statements any reliable guidance to particular provisions. None of the legislators' expressions, as the Government admits, focuses on "the precise meaning of the provision at issue in this case." *Id.*, at 24, and n. 4; cf. *Busic* v. *United States*, 446 U. S. 398, 408 (1980) ("[W]hile Congress had a general desire to deter firearm abuses, that desire was not unbounded. Our task here is to locate one of the boundaries, and the inquiry is not advanced by the assertion that Congress wanted no boundaries."). Under Granderson's interpretation, moreover, drug possessors are hardly favored. In-

---

[7] The dissent suggests that the statutory maximum for the original offense (five years in this case, see 18 U. S. C. §1703(a)) is the maximum revocation sentence. See *post*, at 77, n. 8. The District Court, however, could not have imposed this sentence originally, without providing "the specific reason" for departing from the Guidelines range, 18 U. S. C. §3553(c), and explaining in particular why "an aggravating . . . circumstance [exists,] of a kind, or to a degree, [that was] not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . ." §3553(b). Upward departures from the presumptive Guidelines range to the statutory maximum are thus appropriate only in exceptional cases. See *infra*, at 56, n. 14. The dissent's interpretation, however, would allow district courts to impose the statutory maximum as a revocation sentence in the routine exercise of their ordinary discretion.

stead, they are singled out among probation violators for particularly adverse treatment: They face mandatory, rather than optional, terms of imprisonment.

Next, the Government argues that the drug-possession proviso must be construed *in pari materia* with the parallel provision, added at the same time, governing revocation of supervised release upon a finding of drug possession. In the latter provision, the Government observes, Congress ordered a revocation sentence of "not less than one-third of the term of supervised release," and it expressly provided that the revocation sentence should be "serve[d] in prison." 18 U. S. C. § 3583(g). Correspondingly, the Government maintains, the probation revocation proviso should be construed to require a minimum prison term of one-third the term of probation. The Government acknowledges that, while Congress spelled out "one-third of the term of supervised release," Congress did not similarly say "one-third of the term of probation." However, the Government attributes this difference to the fact that, unlike probation under the current sentencing regime, supervised release is not itself an "original sentence," it is only a component of a sentence that commences with imprisonment.

We are not persuaded that the supervised release revocation prescription should control construction of the probation revocation proviso. Supervised release, in contrast to probation, is not a punishment in lieu of incarceration. Persons serving postincarceration terms of supervised release generally are more serious offenders than are probationers. But terms of supervised release, because they follow up prison terms, are often shorter than initial sentences of probation.[8]

---

[8] A probation term of 1–5 years is available for Class C and D felonies; the corresponding term of supervised release is not more than 3 years. For Class E felonies, a 1–5 year probation term is available, but not more than a 1-year term of supervised release. For misdemeanors, a probation term of not more than 5 years is available; the corresponding term of

Thus, under the Government's *in pari materia* approach, drug possessors whose original offense warranted the more serious sanction of prison plus supervised release would often receive shorter revocation sentences than would drug-possessing probationers.

The Government counters that Congress might have intended to punish probationers more severely because they were "extended special leniency." Reply Brief for United States 13, n. 14. A sentence of probation, however, even if "lenient," ordinarily reflects the judgment that the offense and offender's criminal history were not so serious as to warrant imprisonment. In sum, probation *sans* imprisonment and supervised release following imprisonment are sentences of unlike character. This fact weighs heavily against the argument that the discrete, differently worded probation and supervised release revocation provisions should be construed *in pari materia.*

## C

The history of the probation revocation proviso's enactment gives us additional cause to resist the Government's interpretation. The Anti-Drug Abuse Act, in which the proviso was included, was a large and complex measure, described by one Member of the House of Representatives as "more like a telephone book than a piece of legislation." 134 Cong. Rec. 33290 (1988) (remarks of Rep. Conte). The proviso seems first to have appeared in roughly its present form as a Senate floor amendment offered after both the House and the Senate had passed the bill. See *id.*, at 24924–24925 (House passage, Sept. 22); *id.*, at 30826 (Senate passage, Oct. 14); *id.*, at 30945 (proviso included in lengthy set of amendments proposed by Sen. Nunn, Oct. 14). No conference report addresses the provision, nor are we aware of any post-

---

supervised release is not more than 1 year. See 18 U. S. C. §§ 3561(b), 3583(b).

conference discussion of the issue.[9]  The proviso thus seems to have been inserted into the Anti-Drug Abuse Act without close inspection.  Cf. *United States* v. *Bass*, 404 U. S. 336, 344 (1971) (applying rule of lenity, noting that statutory provision "was a last-minute Senate amendment" to a long and complex bill and "was hastily passed, with little discussion, no hearings, and no report").

Another probation-related provision of the Anti-Drug Abuse Act, proposed shortly before the proviso, casts further doubt on the Government's reading.  That provision amends the prohibition against using or carrying an explosive in the commission of a federal felony, to provide in part: "Notwithstanding any other provision of law, the court *shall not place on probation or suspend the sentence* of any person convicted of a violation of this subsection . . . ."  Pub. L. 100–690, § 6474(b), 102 Stat. 4380, codified at 18 U. S. C. § 844(h) (emphasis added).  This provision, notwithstanding its 1988 date of enactment, is intelligible only under pre-1984 law: The 1984 Sentencing Reform Act had abolished suspended sentences, and the phrase "place on probation" had yielded to the phrase "impose a sentence of probation."

Granderson's counsel suggested at oral argument, see Tr. of Oral Arg. 22–23, 29–31, 36–41, that the proviso's drafters might similarly have had in mind the pre-1984 sentencing regime, in particular, the pre-1984 practice of imposing a sentence of imprisonment, suspending its execution, and placing the defendant on probation.  See 18 U. S. C. § 3651 (1982) (for any offense "not punishable by death or life imprison-

---

[9] Debate over the conference bill took place in the middle of the night, see 134 Cong. Rec. 32633 (1988) ("I am cognizant that it is 2:20 in the morning, and I will not take long") (remarks of Sen. Dole); *id.*, at 33318 (House vote taken at 1 a.m.), with Congress anxious to adjourn and return home for the 1988 elections that were little more than two weeks away. Section-by-section analyses were produced after conference in both the Senate and the House, but neither publication casts much light on the proviso.  See *id.*, at 32707 (Senate); *id.*, at 33236 (House).

ment," the court may "suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best"). The proviso would fit the suspension-of-execution scheme precisely: The "original sentence" would be the sentence imposed but not executed, and one-third of that determinate sentence would be the revocation sentence. In that application, the proviso would avoid incongruities presented in Granderson's and the Government's interpretations of the words "original sentence": An imposed, albeit unexecuted, term of imprisonment would be an actual, rather than a merely available, sentence, and one-third of that sentence would be a term of imprisonment, not probation. If Granderson could demonstrate that the proviso's drafters in fact drew the prescription to match the pre-1984 suspension-of-execution scheme, Granderson's argument would be all the more potent: The closest post-1984 analogue to the suspended sentence is the Guidelines sentence of imprisonment that could have been implemented, but was held back in favor of a probation sentence.[10]

We cannot say with assurance that the proviso's drafters chose the term "original sentence" with a view toward pre-1984 law.[11] The unexacting process by which the proviso was enacted, however, and the evident anachronism in another probation-related section of the Anti-Drug Abuse Act, leave us doubtful that it was Congress' design to punish drug-possessing probationers with the extraordinarily disproportionate severity the Government urges.

---

[10] See Cunningham, Levi, Green, & Kaplan, Plain Meaning and Hard Cases, 103 Yale L. J. 1561, 1579–1581 (1994).

[11] The chief difficulty with such an interpretation is that pre-1984 law recognized two kinds of suspended sentences, each of which could lead to probation. While suspension of the *execution* of sentence, as mentioned, neatly fits Granderson's theory, suspension of the *imposition* of sentence fits the theory less well: In that situation, no determinate "original sentence" would be at hand for precise calculation of the revocation sentence.

In these circumstances—where text, structure, and history fail to establish that the Government's position is unambiguously correct—we apply the rule of lenity and resolve the ambiguity in Granderson's favor. See, *e. g.*, *Bass*, 404 U. S., at 347–349. We decide that the "original sentence" that sets the duration of the revocation sentence is the applicable Guidelines sentence of imprisonment, not the revoked term of probation.[12]

## IV

We turn, finally, to the Government's argument that Granderson's theory, and the Court of Appeals' analysis, are fatally flawed because the Guidelines specify not a term but a range—in this case, 0–6 months. Calculating the minimum revocation sentence as one-third of that range, the mandatory minimum term of imprisonment would be 0–2 months, the Government asserts, which would permit a perverse result: A resentencing court could revoke a drug possessor's sentence of probation, and then impose no sentence at all. Recognizing this curiosity, lower courts have used not 0–6 months as their starting place, but the top of that range, as

---

[12] JUSTICE KENNEDY suggests that our interpretation of the proviso "read[s] a criminal statute against a criminal defendant," *post*, at 67, and that to the extent the rule of lenity is applicable, it would "deman[d] the interpretation" advanced in his opinion—that the proviso establishes a mandatory minimum sentence of probation, one-third as long as the sentence of probation initially imposed, *post*, at 69. We note that Granderson, the criminal defendant in this case, does not urge the interpretation JUSTICE KENNEDY presents. More to the point, both of JUSTICE KENNEDY's assertions presuppose that his interpretation of the proviso is a permissible one. For reasons set out above, we think it is not. See *supra*, at 45, and n. 4.

JUSTICE SCALIA suggests that on our interpretation of the proviso, the mandatory minimum revocation sentence should include a fine as well as a term of imprisonment. See *post*, at 58. The term of probation, however, was imposed in lieu of a sentence of imprisonment, not in lieu of a fine. Revocation of the sentence of probation, we think, implies replacing the sentence of probation with a sentence of imprisonment, but does not require changing an unrevoked sentence earlier imposed.

the "original sentence," which yields 2 months as the minimum revocation sentence. The Government complains that no court has explained why the top, rather than the middle or the bottom of the range, is the appropriate point of reference.[13]

The reason for starting at the top of the range, however, is evident: No other solution yields as sensible a response to the "original sentence" conundrum. Four measures of the minimum revocation sentence could be hypothesized as possibilities, if the applicable Guidelines range is the starting point: The sentence could be calculated as (1) one-third of the Guidelines maximum, (2) one-third of the Guidelines minimum, (3) one-third of some point between the minimum and maximum, such as the midpoint, or (4) one-third of the range itself. The latter two possibilities can be quickly eliminated. Selecting a point between minimum and maximum, whether the midpoint or some other point, would be purely arbitrary. Calculating the minimum revocation sentence as one-third of the Guidelines range, in practical application, yields the same result as setting the minimum revocation sentence at one-third of the Guidelines minimum: To say, for example, that a 2–4 month sentence is the minimum revocation sentence is effectively to say that a 2-month sentence is the minimum.

Using the Guidelines minimum in cases such as the present one (0–6 month range), as already noted, would yield a

---

[13] See *United States* v. *Penn,* 17 F. 3d 70 (CA4 1994) (expressly declaring that the minimum revocation sentence is one-third of the top of the Guidelines range); *United States* v. *Alese,* 6 F. 3d 85 (CA2 1993) *(per curiam)* (same); *United States* v. *Gordon,* 961 F. 2d 426 (CA3 1992) (same); *United States* v. *Clay,* 982 F. 2d 959 (CA6 1993) (holding that the maximum revocation sentence is the top of the Guidelines range), cert. pending, No. 93–52; *United States* v. *Diaz,* 989 F. 2d 391 (CA10 1993) (vacating a revocation sentence that exceeded the top of the original Guidelines range). The Court of Appeals in the present case was not required to identify the minimum term, because Granderson had served five months more than the top of the Guidelines range by the time the opinion was issued. See 969 F. 2d 980, 985 (CA11 1992).

minimum revocation sentence of zero, a result incompatible with the apparent objective of the proviso—to assure that those whose probation is revoked for drug possession serve a term of imprisonment. The maximum Guidelines sentence as the benchmark for the revocation sentence, on the other hand, is "a sensible construction" that avoids attributing to the legislature either "an unjust or an absurd conclusion." *In re Chapman*, 166 U. S. 661, 667 (1897).[14]

## V

We decide, in sum, that the drug-possession proviso of § 3565(a) establishes a mandatory minimum sentence of imprisonment, but we reject the Government's contention that the proviso unambiguously calls for a sentence based on the term of probation rather than the originally applicable Guidelines range of imprisonment. Granderson's interpretation, if not flawless, is a securely plausible reading of the statutory language, and it avoids the textual difficulties and sentencing disparities we identified in the Government's position. In these circumstances, in common with the Court of Appeals, we apply the rule of lenity and resolve the ambiguity in Granderson's favor. The minimum revocation sentence, we hold, is one-third the maximum of the originally

---

[14] The Government observes that "in appropriate circumstances" the sentencing court may depart upward from the presumptive Guidelines range, limited in principle only by the statutory maximum. See 18 U. S. C. § 3553(b). According to the Government, it follows that if the "original sentence" is the "maximum available sentence," then the statutory maximum rather than the top of the presumptive Guidelines range is the appropriate basis for the revocation sentence. Brief for United States 22. The short answer to the Government's argument is that for cases in which the sentencing judge considers an upward departure warranted, a sentence of probation, rather than one of imprisonment, is a most unlikely prospect. It makes scant sense, then, to assume that an "original sentence" for purposes of probation revocation is a sentence beyond the presumptively applicable Guidelines range.

applicable Guidelines range,[15] and the maximum revocation sentence is the Guidelines maximum.

In this case, the maximum revocation sentence is six months. Because Granderson had served 11 months imprisonment by the time the Court of Appeals issued its decision, that court correctly ordered his release. The judgment of the Court of Appeals is therefore

*Affirmed.*

JUSTICE SCALIA, concurring in the judgment.

My view of this case is close to, but not precisely, that of JUSTICE KENNEDY. I agree with him, for the reasons he well expresses, that the only linguistically tenable interpretation of 18 U. S. C. § 3565(a) establishes as a *floor* a sentence one-third of the sentence originally imposed, but leaves the district court free to impose any *greater* sentence available for the offense under the United States Code and the Sentencing Guidelines. Wherein I differ is that I do not believe (as he does) that only the probation element of the original sentence is to be considered—*i. e.*, as he puts it, "that 'original sentence' refers to the sentence *of probation* a defendant in fact received at the initial sentencing." *Post*, at 61 (emphasis added). (THE CHIEF JUSTICE also espouses

---

[15] At oral argument the Government suggested that its own interpretation is more lenient than Granderson's, in those rare cases in which the court has departed downward from the Guidelines to impose a sentence of probation. In *United States* v. *Harrison*, 815 F. Supp. 494 (DC 1993), for example, the court, on the Government's motion, had departed downward from a 97–121 month Guidelines range and a 10-year statutory mandatory minimum to impose only a sentence of probation. When the Government moved to revoke probation for drug possession, the court held that the statute required basing the revocation sentence upon the term of probation rather than the Guidelines range, and, in the alternative, that even if the statute were ambiguous, the rule of lenity would so require. Having found § 3565(a)'s drug-possession proviso ambiguous, we agree that the rule of lenity would support a shorter sentence, whether on *Harrison*'s analysis, or on the theory that the "applicable Guidelines range" is the maximum of a Guidelines range permitting a sentence of probation.

this view, see *post*, at 71.) It seems to me that the term must refer to the *entire* original sentence; where that includes a fine in addition to the probation, the fine also is included. Thus, one-third of a sentence consisting of three years' probation and a $3,000 fine would be not merely one year's probation but a $1,000 fine as well. Even the majority, to maintain some measure of consistency in its strained interpretation of "original sentence," ought to consider, in addition to "the applicable Guidelines sentence of imprisonment," *ante*, at 54, the equally applicable range of fines set forth in the Guidelines, see United States Sentencing Commission, Guidelines Manual § 5E1.2(c)(3) (Nov. 1993) (USSG).*

---

*The Court's reply to this is that since "[t]he term of probation . . . was imposed in lieu of a sentence of imprisonment, not in lieu of a fine," its revocation "implies replacing the sentence of probation with a sentence of imprisonment." *Ante*, at 54, n. 12. I do not know why an implication would inhere in the proviso which contradicts the body of § 3565(a)(2) to which the proviso is attached. The latter provides that the court may "revoke the sentence of probation and impose *any other sentence that was available* . . . at the time of the initial sentencing" (emphasis added). Presumably the Court would concede that "any other sentence" includes a fine—in which case its discernment of some implication that revoked probation may be replaced by only prison time must be wrong.

JUSTICE KENNEDY makes a similar defense. He refuses to consider the fine component because "[t]he proviso instructs the district court to 'revoke the sentence of probation,' but says nothing about the fine imposed at the initial sentencing," *post*, at 61. There is, however, clearly no requirement that only what has been revoked can be the baseline for measuring the requisite minimum—for even the *un*revoked (because already served) portion of the probation period counts. JUSTICE KENNEDY's argument reduces, therefore, to the contention that for some unexplained reason the requisite minimum replacement for the revoked "probation component" of the original sentence can be measured only by that same component. This imperative is not to be found in the language of the statute; to the contrary, interchangeability of fines and probation is suggested by the body of § 3565(a)(2) quoted above. Here, it seems to me, JUSTICE KENNEDY simply abandons the text and adopts an intuited limitation remarkably similar to those for which he criticizes the Court and the dissent.

Both under my analysis, and under JUSTICE KENNEDY's, there exists a problem of comparing the incomparable that ought to be acknowledged. Since Granderson's original sentence was 60 months' probation *plus a $2,000 fine*, I must, in order to concur in today's judgment, conclude, as I do, that the five extra months of prison (beyond the Guidelines' 6-month maximum imposable for the original offense) which Granderson has served are worth at least $667 (one-third the original fine) and that 11 months in prison are the equivalent of 20 months' probation plus a $667 fine—because otherwise I would have to consider imposing some or all of the $5,000 maximum fine imposable for the original offense, see USSG § 5E1.2(c)(3), or indeed consider departing upward from the applicable Guidelines range, see 18 U. S. C. § 3553(b), towards the 5-year imprisonment that is the statutory maximum for the offense, see 18 U. S. C. § 1703(a). And JUSTICE KENNEDY, even if he takes only the probation into account for purposes of determining the "original sentence," must *still* conclude, it seems to me, that 11 months in prison is at least the equivalent of 20 months' probation—because otherwise he would have to consider imposing some or all of the available $5,000 fine or departing upward from the Guidelines.

It is no easy task to determine how many days' imprisonment equals how many dollars' fine equals how many months' probation. Comparing the incommensurate is always a tricky business. See, *e. g., Bendix Autolite Corp.* v. *Midwesco Enterprises, Inc.,* 486 U. S. 888, 897 (1988) (SCALIA, J., concurring in judgment). I frankly doubt that those who drafted and adopted this language intended to impose that task upon us; but I can neither pronounce the results reached by a straightforward reading of the statute utterly absurd nor discern any other self-evident disposition for which they are an obviously mistaken replacement. Cf. *Green* v. *Bock Laundry Machine Co.,* 490 U. S. 504, 527 (1989) (SCALIA, J., concurring in judgment). It seems to me that the other interpretations proposed today suffer, in varying degrees, the

double curse of producing *neither* textually faithful results *nor* plausibly intended ones. It is best, as usual, to apply the statute as written, and to let Congress make the needed repairs. That repairs are needed is perhaps the only thing about this wretchedly drafted statute that we can all agree upon.

For these reasons, I concur in the judgment of the Court.

JUSTICE KENNEDY, concurring in the judgment.

The Court's holding that the drug proviso in 18 U. S. C. § 3565(a) calls for a mandatory minimum sentence of two months in prison rests upon two premises: first, that the term "original sentence" means the maximum Guidelines sentence that the district court could have, but did not, impose at the initial sentencing; and, second, that the verb "sentence" means only "sentence to imprisonment." Neither premise is correct. As close analysis of the text and structure of the statute demonstrates, the proviso requires a mandatory minimum sentence of a probation term one-third the length of the initial term of probation. I concur in the judgment only because Granderson, under my reading of the statute, was entitled to release from prison.

I

Section 3565(a) provides, in relevant part:

"If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may . . .

"(1) continue him on probation, with or without extending the term or modifying or enlarging the conditions; or

"(2) revoke the sentence of probation and impose any other sentence that was available under subchapter A at the time of the initial sentencing.

"Notwithstanding any other provision of this section, if a defendant is found by the court to be in possession

of a controlled substance, thereby violating the condition imposed by section 3563(a)(3), the court shall revoke the sentence of probation and *sentence* the defendant to not less than one-third of the *original sentence*." (Emphasis added.)

The Court construes the term "original sentence" to refer to the maximum sentence of imprisonment available under the Guidelines at the initial sentencing. I accept, in substantial part, THE CHIEF JUSTICE's critique of the Court's strained interpretation, and agree with him that "original sentence" refers to the sentence of probation a defendant in fact received at the initial sentencing. It is true that the term "original sentence," standing alone, could be read to encompass the entire original sentence, including any fine imposed. When considered in context, however, it is preferable to construe the term to refer only to the original sentence of probation. The proviso instructs the district court to "revoke the sentence of probation," but says nothing about the fine imposed at the initial sentencing. Given this, the subsequent reference to "one-third of the original sentence" is better read to mean the probation component of the original sentence, and not the whole sentence.

I disagree with both the Court and THE CHIEF JUSTICE, however, in their conclusion that the verb "sentence" in the proviso means only "sentence to imprisonment." Given the statutory text and structure, the verb "sentence" can mean either "sentence to probation" or "sentence to imprisonment." It follows, in my view, that the drug proviso calls for a mandatory minimum sentence equal to a probation term one-third the length of the original term of probation.

Before 1984, fines and imprisonment were the only sentences in the federal system; probation, by contrast, was an alternative to sentencing. See 18 U. S. C. § 3651 (1982). In the Sentencing Reform Act of 1984, Congress altered this understanding and made probation a kind of sentence. See § 3561(a) (defendant "may be sentenced to a term of proba-

tion"); United States Sentencing Commission, Guidelines Manual ch. 7, pt. A2(a), p. 321 (Nov. 1993) (USSG) ("[T]he Sentencing Reform Act recognized probation as a sentence in itself"). Probation no longer entails some deviation from a presumptive sentence of imprisonment, as the facts of this case illustrate. Granderson's conviction for destruction of mail, when considered in light of his criminal history category, placed him in Zone A of the Guidelines Sentencing Table, which carries a presumptive sentence of 0 to 6 months. The Sentencing Guidelines authorize a sentence of probation for defendants falling within Zone A, see USSG § 5B1.1(a)(1), and set a maximum probation term of five years for the subset of Zone A defendants of which Granderson is a member, see § 5B1.2(a)(1). For defendants like Granderson, then, probation is a sentence available at the initial sentencing, no less so than a sentence of imprisonment. See 18 U. S. C. § 3553(a)(4) (the court, in determining sentence, "shall consider . . . the *kinds of sentence* and the sentencing range established for the applicable category of offense . . . as set forth in the guidelines") (emphasis added). Because the term "to sentence," if left unadorned, can bear any one of three meanings, Congress took care, as a general matter, to specify the type of punishment called for when it used "sentence" as a verb in Chapter 227 of Title 18, the sentencing provisions of the criminal code. See, *e. g.*, § 3561(a) ("sentenced to a term of probation"), § 3572(e) ("sentenced to pay a fine"), § 3583(a) ("impos[e] a sentence to a term of imprisonment").

Congress was less careful when drafting the provision now before us, which does not specify whether the district court should impose a fine, imprisonment, or another term of probation when revoking the original term of probation on account of drug possession. The Government brushes aside this significant ambiguity, contending that "the language of the statute, in context," demonstrates that Congress "plainly intended" to require imprisonment. Brief for United States

14, 15. The Government is correct to say that we must examine the context of the proviso to ascertain its meaning. See *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989). Close attention to that context, however, leads me to conclude that Congress did not intend to require imprisonment upon revocation of the original term of probation.

Congress enacted the drug proviso as § 7303(a)(2) of the Anti-Drug Abuse Act of 1988 (1988 Act). Pub. L. 100–690, 102 Stat. 4181, 4464. Section 7303(b)(2) of the 1988 Act, which concerns defendants serving a term of supervised release, provides that "[i]f the defendant is found by the court to be in the possession of a controlled substance, the court shall terminate the term of supervised release and require the defendant *to serve in prison* not less than one-third of the term of supervised release." 102 Stat. 4464, codified at 18 U. S. C. § 3583(g) (emphasis added).

Sections 7303(a)(2) and (b)(2) are, as the Government puts it, "parallel and closely related." Brief for United States 26. Both pertain to the consequences of drug possession for defendants under some form of noncustodial supervision. They differ, of course, in one fundamental respect: Section 7303(b)(2) explicitly provides for a revocation sentence of imprisonment, while § 7303(a)(2) does not. The difference is significant. " '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Gozlon-Peretz* v. *United States*, 498 U. S. 395, 404 (1991), quoting *Russello* v. *United States*, 464 U. S. 16, 23 (1983) (internal quotation marks omitted). The presumption loses some of its force when the sections in question are dissimilar and scattered at distant points of a lengthy and complex enactment. But in this case, given the parallel structure of §§ 7303(a)(2) and (b)(2) and the fact that Congress enacted both provisions in the same section of the same Act, the presumption is strong. The disparate use of the

term "to serve in prison" is compelling evidence that Congress intended to mandate incarceration as a revocation punishment in § 7303(b)(2), but not in § 7303(a)(2) (the § 3565(a) drug proviso).

The Government interposes a structural argument of its own. Before enactment of the drug proviso in the 1988 Act, § 3565(a) consisted only of subsections (a)(1) and (a)(2), which, for all relevant purposes, took the same form as they do now. Those provisions grant courts two options for defendants who violate probation conditions that do not involve drugs or guns. Section 3565(a)(1) permits a court to continue the defendant on probation, with or without extending the term or modifying or enlarging the conditions. As an alternative, § 3565(a)(2) permits a court to "revoke the sentence of probation and impose any other sentence that was available . . . at the time of the initial sentencing." According to the Government, the two provisions make clear that the consequence of revocation under § 3565(a)(2) is that, in light of § 3565(a)(1), the court must impose a sentence other than probation, namely imprisonment. The meaning borne by the phrase "revoke the sentence of probation" in § 3565(a)(2), the Government concludes, must carry over when the same phrase appears in the drug proviso.

This argument, which the Court accepts, see *ante*, at 45, is not convincing. The conclusion that § 3565(a)(2) demands imprisonment upon revocation of the original sentence of probation does not rest upon anything inherent in the phrase "revoke the sentence of probation." Rather, it follows from the structure of §§ 3565(a)(1) and (a)(2). Congress set off subsection (a)(2) as an alternative to subsection (a)(1), which provides for every conceivable probation option. Thus, in order to make sense of the statutory scheme, § 3565(a)(2) should be read to require a punishment of something other than probation: imprisonment. That consequence, however, is due to the juxtaposition of subsection (a)(2) with subsec-

tion (a)(1), not to Congress' use of the phrase "revoke the sentence of probation" in § 3565(a)(2). Taken by itself, that phrase requires termination of the original sentence of probation, but does not indicate the kind of sentence that must be imposed in its place. The meaning assumed by the phrase "revoke the sentence of probation" in the particular context of § 3565(a)(2), then, does not travel when the same phrase appears in a different context.

The Government's argument that "revoke the sentence of probation," standing alone, must import a sentence of imprisonment also fails to account for how similar language is used in § 7303(b)(2) of the 1988 Act. That provision, as noted above, states that "the court shall terminate the term of supervised release and require the defendant to *serve in prison* not less than one-third of the term of supervised release" if a defendant is found in possession of drugs. 18 U. S. C. § 3583(g) (emphasis added). The statutory text suggests that a subsequent sentence of imprisonment is not implicit in the phrase "the court shall terminate the term of supervised release"; had it been, Congress would not have felt it necessary to mandate imprisonment in an explicit manner. So there is little reason to think that Congress believed imprisonment to be implicit in the parallel phrase "the court shall revoke the sentence of probation" in the § 3565(a) drug proviso, § 7303(a)(2) of the 1988 Act.

The Government's view suffers from a final infirmity. The term "original sentence" refers to the sentence of probation imposed at the initial sentencing. So if the proviso imposed a minimum punishment of incarceration, the length of incarceration must be tied to the length of the revoked sentence of probation. That would be an odd result. " '[I]mprisonment is an 'intrinsically different' form of punishment' " than probation. *Blanton* v. *North Las Vegas,* 489 U. S. 538, 542 (1989), quoting *Muniz* v. *Hoffman,* 422 U. S. 454, 477 (1975). Without belaboring the point, probation is a form of "condi-

tional liberty," *Black* v. *Romano*, 471 U. S. 606, 611 (1985), while imprisonment is nothing of the sort. Transforming a sentence of probation into a prison term via some mathematical formula would, in the words of one court to have considered this issue, constitute a form of "legal alchemy." *United States* v. *Gordon*, 961 F. 2d 426, 433 (CA3 1992). In all events, it is not what one would expect in the ordinary course.

THE CHIEF JUSTICE is correct, of course, to say that it would not be irrational for Congress to tie a mandatory minimum sentence of imprisonment to the length of the original probation term. *Post*, at 75. He is also correct to observe that Congress would have been within its powers to write such a result into law, and that Congress indeed provided for a similar result in § 7303(b)(2) of the 1988 Act, 18 U. S. C. § 3583(g). *Post*, at 76. But these observations do not speak to the only relevant question: whether Congress did so in the text of the § 3565(a) drug proviso, viewed in light of the statutory structure. For all of the above reasons, in my view it did not.

In sum, the drug proviso does not mandate incarceration, but rather must be read to permit a revocation sentence of probation. Concluding that the mandatory minimum sentence is a term of imprisonment would be inconsistent with this reading, and would also lead to the anomaly of tying the length of the mandated prison term to the original term of probation. It follows that the mandatory minimum sentence required by the drug proviso is a probation term equal to one-third the length of the original term of probation. Given that Congress did not eliminate the possibility of incarceration (for example, by drafting the proviso to require a "sentence of probation"), the proviso gives the district court the discretion to impose any prison term otherwise available under the other portions of § 3565(a), which is more severe than the mandatory minimum sentence of probation.

## II

It is unfortunate that Congress has drafted a criminal statute that is far from transparent; more unfortunate that the Court has interpreted it to require imprisonment when the text and structure call for a different result; but most unfortunate that the Court has chosen such a questionable path to reach its destination. I speak of the Court's speculation that Congress drafted the § 3565(a) drug proviso with the pre-1984 federal sentencing regime in mind. See *ante*, at 52–53. Reading the proviso to require Granderson to serve a 2-month mandatory minimum sentence of imprisonment, the Court reasons, "would fit the [pre-1984] scheme precisely." *Ante*, at 53. And viewing the proviso in that light, the Court adds, would avoid problems with both Granderson's and the Government's interpretations. See *ibid.* Although the Court purports not to place much reliance upon this venture in interpretive archaeology, its extended discussion of the matter suggests otherwise.

This interpretive technique, were it to take hold, would be quite a novel addition to the traditional rules that govern our interpretation of criminal statutes. Some Members of the Court believe that courts may look to "the language and structure, legislative history, and motivating policies" when reading a criminal statute in a manner adverse to a criminal defendant. See *United States* v. *R. L. C.*, 503 U. S. 291, 305 (1992) (plurality opinion) (internal quotation marks omitted). Others would eschew reliance upon legislative history and nebulous motivating policies when construing criminal statutes. See *id.*, at 308–310 (SCALIA, J., concurring). But, to my knowledge, none of us has ever relied upon some vague intuition of what Congress "might . . . have had in mind" (*ante*, at 52) when drafting a criminal law. And I am certain that we have not read a criminal statute against a criminal defendant by attributing to Congress a mindset that reflects a statutory framework that Congress itself had discarded over four years earlier.

Of course, the Court thinks it has done Granderson and probationers like him a great favor with its guesswork: Assuming that the drug proviso mandates incarceration, the Court's intuitions lead it to conclude that the mandatory minimum sentence of imprisonment here is 2, rather than 20, months. But in its rush to achieve what it views as justice in this case, the Court has missed a broader point: The statute, by word and design, does not mandate a punishment of imprisonment on revocation. In my respectful submission, had the Court adhered to the text and structure of the statute Congress enacted and the President signed, rather than given effect to its own intuitions of what might have been on Congress' mind at the time, it would have come to a different conclusion. See *Deal* v. *United States*, 508 U. S. 129, 136–137 (1993). And the fortuity that Granderson himself does not contend that the proviso permits a revocation sentence of probation, see *ante*, at 54, n. 12, is no reason to overlook that option here, given that our interpretation of the statute binds all probationers, not just Granderson. Cf. *Elder* v. *Holloway*, 510 U. S. 510, 514–516, and n. 3 (1994).

Perhaps the result the Court reaches today may be sensible as a matter of policy, and may even reflect what some in Congress hoped to accomplish. That result, however, does not accord with the text of the statute Congress saw fit to enact. Put in simple terms, if indeed Congress intended to require the mandatory minimum sentence of imprisonment the Court surmises, Congress fired a blank. See *Puerto Rico Dept. of Consumer Affairs* v. *ISLA Petroleum Corp.*, 485 U. S. 495, 501 (1988) ("[U]nenacted approvals, beliefs, and desires are not laws"). It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think, perhaps along with some Members of Congress, is the preferred result. See *Smith* v. *United States*, 508 U. S. 223, 247, n. 4 (1993) (SCALIA, J., dissenting) ("Stretching language in order to write a more effective statute than Congress devised is not an exercise we should

indulge in"); *Pavelic & LeFlore* v. *Marvel Entertainment Group, Div. of Cadence Industries Corp.*, 493 U. S. 120, 126 (1989) ("Our task is to apply the text, not to improve upon it"); *United States* v. *Locke*, 471 U. S. 84, 95 (1985) ("[T]he fact that Congress might have acted with greater clarity or foresight does not give courts a *carte blanche* to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do"). This admonition takes on a particular importance when the Court construes criminal laws. "[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity," *United States* v. *Bass*, 404 U. S. 336, 348 (1971), and set the punishments therefor, see *Bifulco* v. *United States*, 447 U. S. 381 (1980).

Under any of the three interpretations set forth in the opinions filed today, there are bound to be cases where the mandatory sentence will make little sense or appear anomalous when compared with sentences imposed in similar cases. Some incongruities, however, are inherent in any statute providing for mandatory minimum sentences.

In my view, it is not necessary to invoke the rule of lenity here, for the text and structure of the statute yield but one proper answer. But assuming, as the Court does, that the rule comes into play, I would have thought that it demands the interpretation set forth above. For these reasons, I concur only in the judgment.

CHIEF JUSTICE REHNQUIST, with whom JUSTICE THOMAS joins, dissenting.

The Court today interprets the term "original sentence," as it appears in 18 U. S. C. § 3565(a), to mean "the maximum sentence, under the relevant Sentencing Guidelines range, which a defendant could have received, but did not, when initially sentenced." I think this interpretation ignores the

most natural meaning of these two words, and I therefore dissent.

Section 3565(a) does not indicate on its face whether a defendant found in violation of probation must be sentenced to prison or resentenced to another term of probation. I agree with the Court that § 3565(a) must be read to require imposition of a term of imprisonment; otherwise, as the Court explains, the proviso would be senseless.[1] See *ante,* at 45; *In re Chapman,* 166 U. S. 661, 667 (1897) ("[N]othing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion"). If the Court had stopped there, I would have been happy to join its opinion. Having correctly resolved one ambiguity in § 3565(a), however, the Court proceeds to find another, regarding the meaning of the term "original sentence," where none exists. The Court thus ultimately concludes, incorrectly in my view, that the rule of lenity should be applied.

The Court believes that the Government's reading of § 3565(a) is not "unambiguously correct." *Ante,* at 54. As we have explained, however, the rule of lenity should not be applied "merely because it [is] *possible* to articulate a construction more narrow than that urged by the Government." *Moskal* v. *United States,* 498 U. S. 103, 108 (1990). Instead we have reserved lenity for those situations where, after "[a]pplying well-established principles of statutory construction," *Gozlon-Peretz* v. *United States,* 498 U. S. 395, 410 (1991), there still remains "a grievous ambiguity or uncer-

---

[1] The option of imposing a fine after revocation is also foreclosed. As a matter of common usage, the prepositional phrase following a noun need not be repeated when the noun appears again in the same sentence. Thus, § 3565(a) reads: "[T]he court shall revoke the sentence *of probation* and sentence the defendant to not less than one-third of the original sentence *[of probation]*." (Emphasis added.) "[N]ot less than one-third" of a term of probation is a period of time. A fine cannot follow revocation, then, because a fine is measured in money, not time.

tainty in the language and structure of the Act," *Chapman* v. *United States*, 500 U. S. 453, 463 (1991) (internal quotation marks and citation omitted).

The term "original sentence" is not defined in the statute. A basic principle of statutory construction provides that where words in a statute are not defined, they "must be given their ordinary meaning." *Id.*, at 462; see also *Smith* v. *United States*, 508 U. S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning").

Whether one consults a dictionary or common sense, the meaning of "original sentence" is plain: The term refers to the initial judgment imposing punishment on a defendant. "Original" is commonly understood to mean "initial" or "first in order." See Webster's Third New International Dictionary 1592 (1971) (Webster's) (defining "original" as "of or relating to a rise or beginning . . . initial, primary"); Black's Law Dictionary 1099 (6th ed. 1990) (defining "original" as "[p]rimitive" or "first in order"). "Sentence," in turn, is ordinarily meant in the context of criminal law to refer to the judgment or order "by which a court or judge imposes punishment or penalty upon a person found guilty." Webster's 2068; see also Black's Law Dictionary, *supra*, at 1362 (defining "sentence" as "[t]he judgment . . . imposing the punishment to be inflicted, usually in the form of a fine, incarceration, or probation").[2] In the context of § 3565(a), the term "original sentence" thus must refer to the sentence of probation a defendant actually received when initially sentenced. It *cannot*, therefore, mean what the Court says it means: the maximum sentence which a defendant could have received, but did not.

The Court's interpretation thus founders, I believe, because the word "sentence" does not ordinarily, or even occa-

---

[2] Federal sentencing law also consistently uses the word "sentence" to refer to the punishment actually imposed on a defendant. See, *e. g.*, 18 U. S. C. §§ 3551(b) and (c), 3553(a), (b), (c), and (e), and 3554–3558.

sionally, refer to a *range* of available punishment. Nor does the modifying word "original" support the Court's interpretation, because "original" is nowhere defined as "potential" or "available," nor can it be so construed. Yet under the Court's interpretation of the term "original sentence," if we know that "sentence" itself does not mean an available range of punishment, then "original" must be twisted to mean what we know it cannot—*i. e.*, "potential" or "available."[3]

This Court has on many occasions demonstrated its clear understanding of the term "original sentence." See, *e. g.*, *Hicks* v. *Feiock*, 485 U. S. 624, 639, and n. 11 (1988) (using term "original sentence" to refer to sentence of imprisonment initially imposed and suspended); *Tuten* v. *United States*, 460 U. S. 660, 666–667, and n. 11 (1983) (using term "original sentence" to refer to period of probation imposed by sentencing court when youthful defendant was initially sentenced); *United States* v. *DiFrancesco*, 449 U. S. 117, 135 (1980), and *id.*, at 148 (Brennan, J., dissenting) (both using term "original sentence" to refer to sentence imposed upon defendant at conclusion of first trial); *North Carolina* v. *Pearce*, 395 U. S. 711, 713, and n. 1 (1969), and *id.*, at 743 (Black, J., concurring in part and dissenting in part) (same); *Pennsylvania ex rel. Sullivan* v. *Ashe*, 302 U. S. 51, 53 (1937)

---

[3] Congress itself, in the subsections preceding and following the provision at issue here, distinguishes between "original" and "available." Sections 3565(a)(2) and (b) provide that under certain circumstances, a court can or must "revoke the sentence of probation and impose any other sentence that was *available* . . . at the time of the initial sentencing." (Emphasis added.) If "original" and "available" were in fact synonymous, or if "sentence" could mean an available range of punishment, Congress could have simply stated in §§ 3565(a)(2) and (b) that upon revocation of probation, a court can or must "impose the original sentence." See *United States* v. *Sosa*, 997 F. 2d 1130, 1133 (CA5 1993) ("The statute taken as a whole demonstrates that Congress knew how to refer to the sentence the defendant could have received at the time of the initial sentencing. Instead, . . . Congress used the term 'original sentence,' which plainly refers to the sentence imposed on the defendant for his original crime").

(same). As these and numerous other opinions show,[4] we have until today invariably used "original sentence" just as one would expect: to refer to the punishment imposed upon a defendant when he was first sentenced, and to distinguish that initial sentence from a sentence the defendant received after some intervening event—such as a new trial, see *Pearce, supra,* or a revocation of probation, see *Hicks, supra.*[5]

The Court's heretofore firm grasp on the meaning of "original sentence" should not be cause for wonder or surprise. Whether alone or in combination, the definitions of "original" and "sentence" simply do not seem open to serious debate. Once the term "original sentence" is accorded its ordinary meaning, the operation of § 3565(a) becomes perfectly clear.[6]

---

[4] The term "original sentence" appears in at least 50 prior opinions. Rather than citing them all, suffice it to say that a review of these opinions reveals that the term is not once used to refer to the range of punishment potentially applicable when a defendant was first sentenced.

[5] Although the term "original sentence" does not appear in other provisions of the Federal Criminal Code chapter on sentencing, it does appear in other federal statutes and rules. In each instance, the term refers to the sentence initially imposed upon a defendant. See, *e. g.,* Fed. Rule Crim. Proc. 35(a)(2) (directing sentencing courts to correct sentences upon remand from a court of appeals if, after further sentencing proceedings, "the court determines that the original sentence was incorrect"); 10 U. S. C. § 863 (providing that upon rehearing in a court-martial, "no sentence in excess of or more severe than the original sentence may be imposed"). The term is similarly used in the Federal Sentencing Guidelines. See, *e. g.,* United States Sentencing Commission, Guidelines Manual § 4A1.2(k) (Nov. 1993) (using term "original sentence" to refer to sentence previously imposed upon defendant); § 7B1.4, comment., n. 4 (same).

[6] The Court suggests that if "original sentence" is given its ordinary meaning, the statute will have to be interpreted to require the absurd result that a revocation sentence be another term of probation. See *ante,* at 47–48, n. 5. I do not see at all how or why the latter proposition follows from the former. The Court rightly rejects interpreting the statute to require reimposition of probation because that would be a senseless reading, and it would be senseless regardless of what the term "original sentence" means. See *ante,* at 44–45. It is thus beyond me why the Court

It follows, from another elementary canon of construction, that the plain language of § 3565(a) should control. See *Moskal*, 498 U. S., at 108. As we stated in *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 108 (1980), "[a]bsent a clearly expressed legislative intention to the contrary, [the statutory] language must ordinarily be regarded as conclusive."[7]

The Court offers several reasons for rejecting the most natural reading of § 3565(a). None of them persuades. The Court begins by suggesting that if Congress meant for the sentence of probation to be used to calculate the length of incarceration, it could have stated so more clearly. See *ante*, at 46. Although perhaps true, Congress could have just as easily, if it wished, stated in clear terms that the sentence of incarceration should be calculated based on the maximum available sentence under the Guidelines range. Indeed, as I have already noted, *supra*, at 72, n. 3, Congress stated something very similar in the subsections preceding and following the one at issue, where it provided that upon revocation of probation, a court can or must impose any sentence that was "available" when the defendant was initially sentenced. See §§ 3565(a)(2) and (b); *United States* v. *Sosa*, 997 F. 2d 1130, 1133 (CA5 1993); *United States* v. *Byrkett*, 961 F. 2d 1399, 1400–1401 (CA8 1992) ("If Congress, in referring to the 'original sentence,' meant the Guidelines range

seems to think that according the term "original sentence" its most natural reading would require it to readopt a reading of the statute that it justifiably discarded as senseless.

[7] The Court suggests that the legislative history of § 3565(a) casts doubt upon the Government's interpretation. Yet even the Court recognizes that the legislative history is, at best, inconclusive. See *ante*, at 49 ("None of the legislators' expressions . . . focuses on 'the precise meaning of the provision at issue in this case'") (quoting Brief for United States 24, and n. 4); see also *ante*, at 51–53, and n. 11. Where the language of a statute is clear, that language, rather than "isolated excerpts from the legislative history," should be followed. *Patterson* v. *Shumate*, 504 U. S. 753, 761, and n. 4 (1992).

applicable at the time of the initial sentencing, it would have simply said, 'any other sentence that was available . . . at the time of the initial sentencing,' as it did" in §§ 3565(a)(2) and (b)).

The Court also asserts that its reading of the term avoids according two different meanings to the word "sentence." Yet under the Court's own interpretation, the word "sentence" when used as a verb refers to the imposition of a fixed period of incarceration; but when the word "sentence" next appears, as a noun, the Court concludes that it refers to a range of available punishment. Thus it is the Court's reading of the statute that fails "'to give . . . a similar construction'" to a word used as both a noun and a verb in a single statutory sentence. See *ante*, at 46 (quoting *Reves* v. *Ernst & Young*, 507 U. S. 170, 177 (1993)). Under what I think is the correct reading of the statute, all that changes is what the defendant will be (or was) sentenced to—prison or probation; the word "sentence" itself does not change meanings.

The Court next contends that "'[p]robation and imprisonment are not fungible,'" *ante*, at 46 (citation omitted), and that its interpretation of the statute avoids the "shoal" supposedly encountered when explaining "how multiplying a sentence *of probation* by one-third can yield a sentence *of imprisonment*," *ante*, at 47. Probation and imprisonment, however, need not be fungible for this statute to make sense. They need only both be subsumed under the term "sentence," which, for the reasons previously stated, they are. See Black's Law Dictionary, at 1362 (defining "sentence" as a judgment imposing punishment, which may include "a fine, incarceration, or probation"). While tying the length of imprisonment to the length of the original sentence of probation might seem harsh to the Court, surely it is not an irrational method of calculation. Indeed, the Court does not question that Congress *could have* tied the length of imprisonment to the length of the original sentence of probation.

Congress in fact prescribed a similar method of calculation in a parallel provision of the Anti-Drug Abuse Act of 1988, 18 U. S. C. § 3583(g), which was added at the same time as § 3565(a) and which also sets out the punishment for defendants found in possession of a controlled substance. Section 3583(g) explicitly provides: "If the defendant is found by the court to be in the possession of a controlled substance, the court shall terminate the term of supervised release and require the defendant to serve in prison not less than one-third of the term of supervised release." Considering that §§ 3565(a) and 3583(g) were enacted at the same time and are directed at precisely the same problem, it seems quite reasonable to construe them *in pari materia* to call for parallel treatment of drug offenders under noncustodial supervision. Whatever the differences between supervised release and probation, surely supervised release is more like probation than it is like imprisonment. That Congress explicitly chose in § 3583(g) to tie the length of imprisonment to the length of supervised release suggests quite strongly that Congress meant in § 3565(a) to use length of the original sentence of probation as the basis for calculation. At the very least, the method of calculation prescribed in § 3583(g) removes the imaginary "shoal" which blocks the Court's way to a sensible construction of § 3565(a).

The Court refuses to read these provisions *in pari materia* because a sentence of probation is normally—but not necessarily—longer than a period of supervised release. See *ante*, at 50–51, and n. 8. Simply because the end result of the calculation might be different in some cases, however, is not a persuasive reason for refusing to recognize the obvious similarity in the methods of calculation. Nor is it irrational for Congress to have decided that, in general, those defendants who have already been incarcerated should return to prison for a shorter time than those who have served no time in prison.

Here, as in other portions of its opinion, the Court expresses concern with the apparent harshness of the result if "original sentence" is interpreted to mean the sentence of probation initially imposed on a defendant.[8]   In some cases the result may indeed appear harsh.   Yet harsh punishment, in itself, is neither a legitimate ground for invalidating a statute nor cause for injecting ambiguity into a statute that is susceptible to principled statutory construction.   See *Callanan* v. *United States*, 364 U. S. 587, 596 (1961) ("The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers").   A straightforward reading of § 3565(a) may in some cases call for imposition of severe punishment, but it does not produce "a result so absurd or glaringly unjust, as to raise a reasonable doubt about Congress' intent." *Chapman*, 500 U. S., at 463–464 (internal quotation marks and citations omitted).

The Court's interpretation of § 3565(a), finally, creates an incurable uncertainty: It offers no sound basis for choosing

---

[8] The Court expresses disbelief that Congress could have intended to authorize punishment for drug-possessing probationers so much more severe than the punishment authorized for the probationer's original offense. *Ante*, at 48–49.   I think the Court misses two points.   First, as the Court itself seems to recognize, the maximum punishment authorized for respondent's original offense is not the Guidelines range, but the maximum statutory sentence.   See 18 U. S. C. §§ 1703(a), 3553(b), 3559(a)(4), and 3581(b)(4).   In respondent's case, the punishment authorized for his original offense is therefore *exactly equal* to the punishment authorized for his probation violation—five years' imprisonment.   See § 1703(a).   Second, Congress provided for equally harsh revocation sentences in the subsections preceding and following § 3565(a).   By allowing sentencing courts to impose "any other sentence that was available . . . at the time of the initial sentencing," §§ 3565(a)(2) and (b), Congress authorized these courts to impose the maximum statutory sentence upon revocation of probation. Thus, if respondent's probation had been revoked pursuant to §§ 3565(a)(2) or (b), he would have faced the same maximum revocation sentence he faces under § 3565(a)—five years' imprisonment.

which point in the Guidelines range should serve as the basis for calculating a revocation sentence. After describing the four possible reference points within the range, the Court selects the maximum available sentence. It rejects selecting a point in the middle of the available range, because to do so "would be purely arbitrary." *Ante*, at 55. Yet the Court does not explain why choosing the top end of the range is any less arbitrary, or any more "sensible," than picking a point in the middle of the range. Indeed, the Court's selection smacks of awarding a consolation prize to the Government simply out of concern that the Government was mistakenly done out of victory in the main event. And choosing the *maximum possible sentence* under the Guidelines hardly seems consistent with the rule of lenity which the Court purports to apply.[9]

A straightforward reading of § 3565(a) creates no similar uncertainty. Because I think the language of § 3565(a) is clear, I would apply it. Accordingly, I would reverse the Court of Appeals.

---

[9] The Government suggests that if "original sentence" does not refer to the sentence of probation imposed, then it might just as readily refer to the statutory sentence. The Court rejects this suggestion because imposing the maximum statutory sentence would require an upward departure from the Guidelines range, and probation "is a most unlikely prospect" in any case involving an upward departure. *Ante*, at 56, n. 14. Thus, according to the Court, it "makes scant sense" to assume that "original sentence" is the statutory maximum sentence. *Ibid.* By the same reasoning, however, it makes little sense to assume that the maximum Guidelines sentence is the "original sentence," as probation is an "unlikely prospect" in any case where a defendant would otherwise receive the maximum available sentence under the Guidelines. Indeed, if the plausibility of the potential sentence is the Court's guide, one would think the Court would choose the bottom of the Guidelines range as its benchmark.