BOUDIN, Circuit Judge,
concurring, with whom TORRUELLA, Circuit Judge, joins in the concurrence and joins in the result.
In construing federal statutes, an emphasis on literal language has much to be said for it, but phrases that at first glance seem to have a single meaning sometimes turn out to be more malleable. In this case, the statute’s phrase “in furtherance of’ can be read to extend to any firearm causally connected to the drug offense— the view taken by a number of circuits. On this view, receiving a gun as payment for drugs facilitates (and therefore its possession furthers) the drug sale. Indeed, if nothing but words mattered, using the gun as a paper weight or door stop during the transaction might qualify.
Yet, in adopting the “in furtherance” test, Congress likely had in mind a gun’s possession in order to threaten or use it, if necessary, to accomplish the drug sale or at least to make the other party (or interlopers) fear its use. Possessing a gun to protect one’s drugs from theft incident to a sale or to secure a base of operations are obvious examples. E.g., 144 Cong. Rec. 1719 (1998) (statement of Rep. McCollum); id. at 26,608-09 (statement of Sen. DeWine); cf. Smith v. United States, 508 U.S. 223, 238, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (typical case under use prong is one in which the firearm is used as “a means of protection or intimidation”).[6]
That Congress had any special concern with guns used solely as payment for drugs is not clear,[7] nor is it obvious why the simple transfer of a gun from one drug dealer to another creates a new danger; conceivably a transfer from a consumer to *47 a drug dealer might do so, although drug dealers rarely seem to lack access to guns and such sales are often independently unlawful. So, coupling this with the rule of lenity, United States v. Granderson, 511 U.S. 39, 54, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994), the statute could be read more narrowly in light of its main purpose to exclude from “in furtherance” those transfers, like Gurka’s, in which the gun is merely currency.
But the Supreme Court resolved in Smith the question of whether 18 U.S.C. § 924(c)(1)(A) goes beyond the typical use of guns as weapons to cover at least some barter transactions, albeit under the provision’s “use” prong and involving a trade in the opposite direction (guns for drugs). 508 U.S. at 229, 113 S.Ct. 2050. Once the barter bridge is crossed, it is hard to argue that the statute automatically excludes eases where guns were possessed as currency in a drug transaction, especially as Smith, 508 U.S. at 228-31, 235-39, 113 S.Ct. 2050, and Watson v. United States, 552 U.S. 74, 78-83, 128 S.Ct. 579, 169 L.Ed.2d 472 (2007), stress an emphatically literal reading.
Neither Smith nor Watson directly controls here (since neither addressed the meaning of the statute’s possession “in furtherance” prong and Watson explicitly left that issue open, 552 U.S. at 83, 128 S.Ct. 579); but Smith rejected the view that “the relationship between the gun and the drug offense [in a gun-for-drugs exchange] is not the type of connection Congress contemplated when it drafted § 924(c)(1),” 508 U.S. at 238, 113 S.Ct. 2050. In such an exchange, Smith said, the gun is “an integral part of the transaction,” without which “the deal would not have been possible.” 508 U.S. at 238, 113 S.Ct. 2050.[8]
And Smith expressly rejected a claim of contrary congressional purpose: it reasoned that Congress probably did not intend to “draw a fine metaphysical distinction between a gun’s role in a drug offense as a weapon and its role as an item of barter; [the gun] creates a grave possibility of violence and death in either capacity” because its “treat[ment] momentarily as an item of commerce does not render it inert or deprive it of destructive capacity.” 508 U.S. at 240, 113 S.Ct. 2050. Instead, “it can be converted instantaneously from currency to cannon.” Id.
Watson provides Gurka no escape. Although Watson (unlike Smith) addressed a drugs-for-gun trade and reserved the “in furtherance” question, its restriction of the “use” prong was predicated on the word’s connotation of action, 552 U.S. at 78-79, 128 S.Ct. 579; “possession,” as our panel opinion explains, does not pose for the government the same semantic barrier, nor did Watson disturb Smith’s inferences about congressional purpose, id. at 82-83, 128 S.Ct. 579. Only if the Supreme Court were to re-examine its basic premise as to the statute’s purpose could a favorable result follow for Gurka. See Watson, 552 U.S. at 84, 128 S.Ct. 579 (Ginsburg, J., concurring).

. The Senate hearing on the amendment that led to inclusion of the possession prong is filled with references to weapons used to intimidate, threaten or embolden. E.g., A Bill to Throttle Criminal Use of Guns: Hearing on S. 191 Before the S. Comm, on the Judiciary, 105th Cong. 4 (1997) (‘‘Senate Hearing”) (statement of Sen. Helms); id. (statement of Sen. DeWine); id. at 9-10 (statement of Kevin Di Gregory, Deputy Assistant Att'y Gen., Criminal Division, Department of Justice); id. at 35-37 (prepared statement of Thomas G. Hungar, Gibson, Dunn, and Crutcher).

. Interestingly, there are a couple of references in the Senate hearing, where the "possession” amendment was under consideration, to guns used as barter; but they are essentially descriptions, rather than endorsements, of the dicta in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), reiterating the holding of Smith, that barter can be deemed “use” of the gun. Senate Hearing, supra, at 1 (statement of Sen. Hatch); id. at 10 (statement of Kevin Di Gregory, Deputy Assistant Att’y Gen., Criminal Division, Department of Justice).

. That transaction, arising under the "use” prong, was found to meet the required “during and in relation to” standard of that provision. Even if "in furtherance” is a "slightly higher standard” of connection than "during and in relation to,” H. Rep. 105-344, at 11 (1997), the former phrase’s literal meaning permits this same line of reasoning.